[Civ. No. 2162.   Third Appellate District.—May 18, 1920.]

# DEWEY S. GROVER et al., Appellants, v. JOHN MORRISON, Respondent.

[1] NEGLIGENCE—AUTOMOBILE COLLISION—CAUSE OF ACTION—SIMULTANEOUS NEGLIGENCE OF PLAINTIFFS AND DEFENDANTS—EVIDENCE—FINDING—APPEAL.—In an action for damages for personal injuries received in a collision between plaintiffs' and defendant's automobiles while crossing a bridge, if the evidence is such that the jury cannot determine which of the two was to blame for the collision, in other words, whether it was the defendant's negligence or that of the plaintiffs or the contemporaneous negligence of both that was the proximate cause of the injury, the appellate court cannot hold, as a matter of law, that the finding of the jury that both the plaintiffs and the defendant were equally at fault, and that the accident would not have occurred but for the simultaneous negligence of both, is not supported by the evidence.

[2] ID.—POSITION OF MACHINES AFTER COLLISION—PROPRIETY OF QUESTIONS AND STATEMENT BY TRIAL JUDGE.—In such action, a witness for plaintiffs having testified that he saw evidence of a collision a specified distance from the end of the bridge, the distance stated being at variance with that stated by other witnesses, the court did not commit error in asking him whether he measured the distance or was just guessing at it; neither did the court, in ruling on an objection interposed to a question propounded to such witness as whether he saw any evidence of collision, commit error prejudicial to plaintiffs in suggesting that the machine of plaintiffs had been moved from the position in which it was left as the result of the collision, where, after counsel for plaintiffs stated there was no testimony that the machine had been moved, the court remarked that the question objected to had no application or reference to plaintiffs' machine.

[3] ID.—CONDITION OF WITNESSES AS TO SOBRIETY—DENIAL OF CROSS-EXAMINATION—ABSENCE OF PREJUDICE.—In such action, while the ruling of the court denying plaintiffs the right to cross-examine

one of defendant's witnesses as to whether or not the latter was drunk on the day of the accident and for months previous thereto, such witness having testified that a certain witness of plaintiffs was drunk on the day of the accident, was erroneous, it was not prejudicial to the rights of plaintiffs where the testimony of their witness was merely corroborative of the testimony given by them and a different result would not have followed from the allowance of such cross-examination.

[4] Id.—Right of Recovery — Damages — Instructions.—In such action, instructions that if, when the collision occurred, both parties were driving on the center line of the bridge, then both were equally guilty of negligence contemporaneously occurring and that in that case neither was entitled to a verdict for damages as against the other, that if neither party was negligent, or if both parties were equally guilty of negligence, simultaneously committed, neither was entitled to recover against the other, and that the jury were not legally authorized to award damages to either party if the liability of neither was established by the evidence merely because the court explained to them the rule as to the measure of damages in such a case, correctly state the law.

[5] Id.—Form of Verdict—Sufficiency of.—In such action, the jury having found in effect against the plaintiffs on their complaint and against the defendant on his cross-complaint, its verdict "that neither party *are* entitled to damages," although a little out of shape in its grammatical construction, is in language sufficiently clear and explicit to put beyond doubt the proposition that the result reached by the jury was that neither of the parties to the action was entitled to recover against the other.

APPEAL from a judgment of the Superior Court of Yuba County.  K. S. Mahon, Judge.  Affirmed.

The facts are stated in the opinion of the court.

W. H. Carlin for Appellants.

Ray Manwell for Respondent.

HART, J.—Plaintiffs brought the action to recover from defendant damages for injuries received by plaintiff Mae Grover in an automobile collision, alleged to have been caused by the negligence of the defendant, for physicians', nurses', and hospital charges incurred by her and for damage to plaintiffs' automobile. Defendant filed a cross-complaint in which he asked for six hundred dollars, dam-

ages to his automobile, claiming that the collision was due to the negligence of the plaintiffs. Trial was had before a jury, which found "against the plaintiffs and against the defendant and further find that neither party is entitled to damages." Judgment was accordingly entered, from which judgment plaintiffs prosecute this appeal.

It is first contended by appellants that the evidence is insufficient to justify the verdict.

Crossing the Yuba River, at the city of Marysville, is a bridge which, with its approaches, commences at the termination of D Street, in said city, and is approximately two thousand two hundred feet in length to the southerly bank of said river; the roadway on said bridge is twenty-four feet in width, with a raised sidewalk on each side three feet in width and railings on the outside of each sidewalk.

On the eighth day of December, 1917, at about the hour of 4 o'clock in the afternoon, with the sun shining, plaintiffs, husband and wife, drove upon the south end of the bridge in a Ford automobile on their way to Marysville. Plaintiff Dewey S. Grover testified that upon driving upon the bridge he traveled on the east, or right-hand, side at a speed approximately of ten or twelve miles an hour and was traveling carefully. When he was about halfway across the bridge he saw approaching him a small tractor, driven by a man named Davis, coming south from the north end of the bridge on the west side. A little farther on he saw defendant's machine coming around the left-hand side of the tractor to pass it. The witness testified: "It kept coming right toward me. I was running along probably a foot or two from the sidewalk of the bridge. I supposed he would turn off in just a minute, which they do lots of times, people will run close to you and then turn off, but he kept coming, and when I saw he wasn't going to stop I jammed my car into the sidewalk, commenced stopping it, tried to stop it; when he got right up close, about twenty or twenty-five feet away from me, he turned out to the right right quick, to the west, and he didn't turn fast enough to miss me, his car caught on the corner of my car kind of sloping and jammed my car into the bridge and broke one of my wheels down; the hind end of his car flew around kind of catacornered across the bridge, toward the west and southerly. When we stopped, my car was on the sidewalk, the hind wheels, his

car was sitting against my car, sitting across the bridge, we were both kind of across the bridge then. The left-hand corner of defendant's car struck the left-hand corner of mine. When the collision came my car was right up against the east sidewalk of the bridge, probably three inches from it. Before the collision I should judge the defendant was going probably twenty miles an hour, he was going pretty fast.''

The plaintiff Mae Grover testified practically to the same facts as did her husband. She was severely injured and people in a passing automobile took her and her husband to Marysville.

William Davis, called as a witness for plaintiffs, testified that he was a tractor driver and on the day of the collision was driving a tractor on the right-hand side of the bridge going south and was about a third of the way or nearly halfway across the bridge when defendant's machine pulled around from behind him and ran into Grover's machine, who was coming north on the east side of the bridge. He said the defendant's automobile ''had about 150 feet clearance to get on the other side, but it didn't seem to get there. He turned trying to make it go on the right, on his own side, but he didn't make it fast enough before they collided.'' The witness described the positions of the two automobiles after the collision, placing them about as plaintiffs did. He said he helped carry defendant's car around so he could pass. On cross-examination the witness was asked if he was drunk or sober at the time of the collision and answered that he ''wasn't either one but that I had had a couple of drinks.''

J. J. Degire, a stableman residing at Marysville, at the time of the collision was hauling gravel with a two-horse team and wagon. As he drove on to the bridge from the south end he saw the accident and drove to the place. He testified: ''I got up and helped get the machines out of the way so I could come on to town.'' He described the location of the two cars. ''I helped Mr. Davis, the tractor driver, move Mr. Morrison's machine out of the way so he could get by.'' On cross-examination the witness said that Davis was sober so far as he could see.

Two other witnesses, one of them being R. C. De Witt, called on behalf of plaintiffs, testified that they saw the

Ford after the collision and that it was on the east side of the roadway.

The defendant testified that he had noticed Davis in the city of Marysville driving the tractor toward the bridge; that when he (defendant) drove upon the bridge there was no vehicle of any kind ahead of him on the bridge; that when he got fairly on the bridge he was traveling at a rate of about ten or fifteen miles an hour. He testified: ''I saw another machine coming toward me close up to the center, until he got so close to me that I had no chance to get away, and he was probably then six inches too close to me, he was over enough on my line so I couldn't turn off and get away fast enough to get away from him, he was coming along pretty fast speed.'' His description of how the collision occurred, as to the positions of the two cars, was about as already given. He said that he, a man named Strawn, and a colored man moved defendant's car to the sidewalk on the west side.

On cross-examination, the defendant first stated, as he did in his direct examination, that when the collision occurred the plaintiffs' car was ''over the center [of the bridge] on my side.'' On further cross-examination as to this point, his answers were not as positive as they previously were. He, for instance, said: ''I don't know that he was over the center—he was at the center—he was at the center; he might have been over. Q. Would you say his left wheel would be at the center? A. I suppose so. . . . Q. How much space, approximately, does it require for your automobile to pass through, taking the full width of the machine at its widest part? A. Seven feet, probably six and one-half or seven, I should judge. I don't know that would cover everything, fenders and all. Q. You came together and your left front wheel struck and locked with the left front wheel of plaintiffs' machine? A. Yes. Q. Both wheels were broken, were they? A. Yes, sir.''

David Morrison, a brother of the defendant, testified that he was in a Ford machine and drove behind a tractor on the bridge, passed it and saw there had been a wreck. He stopped and saw his brother and Strawn and another man move his brother's car to the west side of the center of the bridge, plaintiff's car being on the east side of the center, but he said it was not up on the sidewalk on the east side;

the wheels might have been a foot or so from the sidewalk. James Strawn testified to having assisted in moving defendant's car.

[1] It is plainly apparent from the testimony, of which the foregoing statement embraces a correct epitome, that, when the collision occurred, both the plaintiffs and the defendant were driving very close to the center line of the bridge. At any rate, this court must so view the situation. It is likewise also apparent that upon the question whether, when the collision occurred, the two machines were both running on and along the center line of the bridge, there exists a sharp conflict in the evidence. In fact, there is a pronounced conflict in the evidence upon the question whether, at the time of the accident, the machine of the plaintiffs, who were traveling in a northerly direction, was or was not running beyond the west of the center line of the bridge a few inches. It is true that the defendant, after having on direct examination positively testified that the plaintiffs' machine was on the west of the center line of the bridge a few inches when the collision took place, was not so positive on that point on his cross-examination; still, it was for the jury, under such state of the testimony, to determine what was the fact in that regard. But, in any event, the evidence appears to be such as that the jury could well have found, as it did find, that both machines, when they collided, were traveling so close to the center line of the bridge that it would be very difficult to determine, if, indeed, it could justly be determined at all, which of the two, the plaintiff or the defendant, was to blame for the collision, or, in other words, whether it was the defendant's negligence or that of the plaintiff or the contemporaneous negligence of both that was the proximate cause of the injury. It follows, therefore, that this court is in no position to hold, as a matter of law, that the finding of the jury that both the plaintiff and the defendant were equally at fault, and that the accident would not have occurred but for the simultaneous negligence of both, is not supported by the evidence. The verdict, in effect, implies, of course, that, while the defendant was guilty of negligence, the plaintiff was guilty of contributory negligence, in the absence of which the collision and the injuries resulting therefrom to the plaintiff Mae Grover and to plaintiffs' machine would not have happened;

and, in this connection, we notice the contention of the counsel for the appellants that contributory negligence upon the part of the plaintiffs is not set up or pleaded as a defense by the defendant, and, not being so pleaded, the defendant cannot avail himself of the defense of contributory negligence. But the reply to this contention is to be found in the averments of the cross-complaint filed by the defendant In that pleading, the defendant, asking for affirmative relief against the plaintiffs, alleged and charged in appropriate language that the collision and the consequent damage were due directly and solely to the negligence of the plaintiff, Dewey S. Grover, in that, when the accident occurred, the latter was driving his machine on the west of the center line of the bridge. This is, of course, a straight allegation that the plaintiff himself, by his own negligence, directly contributed to the collision, and thus the issue of contributory negligence upon the part of the plaintiffs was expressly and directly submitted by the pleadings. The cause was not, as is often true where a cross-complaint is filed and the real, vital issues are made up and tendered by an answer thereto, tried alone upon the cross-complaint and the answer of the plaintiff thereto. Each of the parties was seeking affirmative relief, and the case was necessarily tried upon all the pleadings of both parties—that is, upon all the issues involved in all the pleadings filed, and hence, as above suggested, to ascertain what the vital issues of fact to be determined by the jury were, all the pleadings and the issues submitted by them were necessarily to be considered in their entirety. Thus viewing the situation as to the issues of fact involved in the action, as they were made up by the several pleadings of the parties, it is plainly manifest, as above stated, that one of the important questions of fact raised by the pleadings as a whole and which the jury were required to consider and determine, was whether the plaintiff, Dewey S. Grover, himself was guilty of negligence which proximately contributed to the collision and its consequences.

It is to be said, however, that the counsel for the appellants does not appear to be so insistent upon the proposition that there is no substantial support in the evidence for the verdict or upon the point that the issue of contributory negligence upon the part of the plaintiff Dewey S. Grover is not properly raised by the pleadings as he is upon the propo-

sition that, in view of the asserted unsatisfactory character of the evidence as a foundation for the finding of the jury, certain alleged erroneous rulings of the court upon the question of the legal propriety of certain testimony should, with certain alleged erroneous instructions as to the law of the case, be held a sufficient predicate for a judgment of reversal.    These assignments will now briefly be considered.

[2]    During the direct examination of R. C. De Witt, a witness called for plaintiffs, he was asked where on the bridge he saw any evidence of collision.    The question was objected to, counsel for defendant saying: "This collision occurred about ten minutes after four, all these machines had been moved.    Mr. Carlin: There is no evidence that the plaintiffs' machine was moved at all.    The Court: Two witnesses testified it was moved.    Mr. Carlin: Not the plaintiffs' machine, no witness testified at all that plaintiffs' machine was moved at any time.    The Court: That is not asking about the plaintiffs' machine.    Mr. Carlin: That is only preliminary.    The Court: I will hear it; answer the question.    A. I should judge 350 feet somewheres from the north end.    Mr. Carlin: What did you see there?    Counsel for Defendant: Same objection.    The Court: It is very evident if that is true there was quite a change in the machines.    Mr. Carlin: How many feet?    A. About 350 feet.    The Court: 427 feet.    Mr. Carlin: Would you say 350 feet was exact or might it be 427?    Objected to as leading, immaterial, irrelevant and incompetent.    The Court: I will let him answer.    You didn't measure it?    A. No, sir.    The Court: Just guessing at it?    A. Just guessing at it.    Mr. Carlin: What did you see?    A. I saw a Ford and another car in front of it."

The point made by counsel as to the foregoing is that the court, in stating that the plaintiffs' machine had been moved from the position in which it was left by the collision, there having been no testimony that it was moved at the time referred to by the witness De Witt, "trenched upon the province of the jury."    It is further objected that the court trespassed upon the domain of the jury when it stated that there was evidence of a collision on the bridge about "427 feet" from the north end thereof, the witness having previously estimated that the distance was about 350 feet from the north end of the bridge, and, further, that the court was

without legal right to ask the witness if he was merely making a guess as to the distance.

There is nothing so serious in the action of the court thus referred to and criticised, assuming it to be justly amenable to all that is said against it, as to justify us in declaring that thereby the jury were unduly influenced in their consideration of the case or led to reach the conclusion evidenced by their verdict. The court had the right to ask the witness whether he was giving a mere approximation of the distance, or, what amounts to the same thing, "guessing at the distance," or whether his statement as to the distance was based upon an actual measurement thereof. Counsel would not say or contend that he or the attorney on the other side, according as the exigency of the situation might require it, would not be allowed properly to ask such a question or inquire whether a witness, in stating distances, based his testimony in that respect on actual measurements or a mere guess or approximation, and certainly, if counsel may ask such a question, it cannot be error for the court to ask it, if the question is propounded by the latter in a proper manner or so that the jury may not infer that it is the desire or sole purpose of the court thus to discredit the witness or prejudice his testimony in the minds of the jury. As to the suggestion of the court that the machine of the plaintiffs had, before the witness saw any "evidence of a collision," been moved from the position in which it had been left as a result of the collision, it will be noted that, after counsel for plaintiffs stated that there was no testimony that the machine had been moved, the court remarked that the question objected to had no application or reference to plaintiffs' machine, and this observation by the court in a measure corrected its previous alleged misstatement as to the removal of said machine. Moreover, counsel for the plaintiffs having called attention to the fact that there was no testimony up to that stage of the case showing that plaintiffs' machine had been moved, the jury, we must assume, must also have then recalled that there was then no such testimony before them, and we must further assume that if there was no proof of the plaintiffs' machine having been moved, the jury would not assume that there was on the mere inadvertent intimation by the court that such testi-

47 Cal. App. —34

mony had been given before them. We cannot perceive any merit in the objection here considered.

[3] The witness Davis, as above shown, testified in behalf of the plaintiffs. On cross-examination he was asked if he was not under the influence of intoxicating liquor at the time the accident, which he claimed to have witnessed, occurred. He denied that he was then intoxicated. The defendant called one L. P. Worden as a witness, who testified that he had seen the witness Davis as the latter was leaving Marysville with his tractor on the day of the collision and that Davis was drunk. Counsel for plaintiffs, on cross-examination, asked the witness whether he was not drunk himself and whether it was a fact that up to that time for months he did not draw a sober breath. Objections to both questions were sustained and, referring to the second one, the court said: "Mr. Carlin, that is not a proper question to ask. I have ruled. The witness is entitled to protection on the stand and I am going to protect him; it isn't right to ask insulting questions of the witness, and don't do it any more."

We are at a loss to understand the theory upon which the court disallowed the cross-examination. The obvious purpose of proving that Davis was intoxicated was to show that his mental condition was such at the time of the collision as that he was not able to form a proper or an accurate conception of the circumstances under which the collision occurred, or, in other words, to show that his testimony was unreliable and could not be depended upon; and the cross-examination of Davis on that line, as well as any testimony offered in impeachment of his denial of having been drunk at the time in question, were proper. Upon identically the same theory, it was proper for the plaintiffs to show, if it could be done, that Worden was himself intoxicated to an extent that he was thus rendered incapable of knowing or determining whether Davis was intoxicated, or whether, being intoxicated himself, and experiencing the usual effects of such a condition, his brain was susceptible to the impression that every person he met or saw, and not he, was in a state of alcoholic intoxication. But, while we doubt not that the ruling excluding the cross-examination was error, we do not feel that we are justified in holding that it was prejudicial to the rights of the plaintiffs. In other words, we

cannot say that the jury's conclusion was affected by the ruling, or that a different result would have followed from the allowance of the cross-examination. Davis denied that he was intoxicated at the time of the accident, and it was for the jury to determine from his testimony, as compared to that of Worden, what his condition as to sobriety was. Furthermore, as above shown, the testimony of Davis was only corroborative of that of the plaintiffs as to the claim of the latter that the defendant, at the time of the collision, was driving on the east of the center line of the bridge, and even with the testimony of Davis given upon the theory that he was in a perfect state of ebriety when the collision happened, the state of the evidence, as before declared, was such as that the jury might still be in serious doubt as to which of the parties was directly responsible for the accident and thus have been brought to the conclusion at which they arrived, to wit, that both were equally at fault.

[4] The several instructions, given by the court at the request of the defendant, and to which objection is here made because, as is the contention, they do not state the law correctly, may be summarized as follows: That the jury are not to understand that they are to give damages simply because instructions involving the statement of. the rule as to the measure of damages are addressed to them by the court; that such instructions have no application where the liability of the defendant has not been established, "and should not be understood as conveying any intimation that in the opinion of the court the plaintiff is entitled to damages or not [instruction No. 1]; that if you believe from the evidence that the plaintiffs and defendant approached each other from opposite directions on what is commonly known as the D Street bridge, and that their automobiles collided on the center line of said bridge, and that if ordinary care had been exercised on the part of both plaintiffs and defendant, and there was room for the said parties to have turned further to their right-hand sides of said bridge, respectively, thus avoiding any collision, then I instruct you that it is the law that both parties were negligent and neither party may recover as against the other" (instruction No. 5); that if neither party was negligent neither can recover from the other (instruction 7); that if both parties were equally guilty of negligence, then neither can recover (instruction

8); and the giving by the court to the jury of the form of verdict which they returned into court.

The instructions thus referred to, although in some respects, awkwardly phrased, stated the law correctly to the jury. Obviously, the jury were not legally authorized to award damages to either party if the liability of neither was established by the evidence merely because the court explained to them the rule as to the measure of damages in such a case as this; and a more obvious proposition could not be stated than that if neither party was negligent, or if both parties were equally guilty of negligence, simultaneously committed, neither was entitled to recover against the other. By instruction No. 5, the court clearly meant to say, and undoubtedly the jury so understood the instruction, since it could bear or convey no other meaning, that if, when the collision occurred, both parties were driving on the center line of the bridge, then both were equally guilty of negligence contemporaneously occurring and that in that case neither was entitled to a verdict for damages as against the other. As so understood, the instruction involved a correct enunciation of the rule in such a case. It may be added here that the court, in its charge to the jury, gave a full and fair statement of all the principles of law pertinent to the case as it was made by the evidence.

[5] The complaint against the form of the verdict returned by the jury possesses no merit. Its effect was merely to find against the plaintiffs on their complaint and against the defendant on his cross-complaint, and "that neither party *are* entitled to damages." Although a little out of shape in its grammatical construction, the verdict is in language sufficiently clear and explicit to put beyond doubt the proposition that the result reached by the jury was that neither of the parties to the action was entitled to recover against the other.

The judgment is affirmed.

Nicol, P. J., *pro tem.*, and Burnett, J., concurred.