WELLS, INC. ET AL., APPELLANTS, v. FLORA MARIE SHOEMAKE, ET AL., RESPONDENTS.

No. 3451

February 17, 1947. 177 P. 2d 451.

58

*Morse, Graves & Jones,* of Las Vegas, for Appellants.

*V. Gray Gubler,* of Las Vegas, for Respondents.

## OPINION

By the Court, EATHER, C. J.:

This action was instituted by the respondents, Flora Marie Shoemake and John Alley Shoemake by Flora Marie Shoemake, his guardian ad litem, to recover damages for the death of Kenneth C. Shoemake, who was husband and father of the respective respondents and who, at the time of his death, was twenty-nine years of age. The death was alleged to have been caused by the negligence of the appellants.

The parties will be referred to as in the court below, and to better appreciate the contentions of both parties it is necessary that we briefly state the facts.

The accident in which the deceased sustained the injuries which resulted in his death happened near the city of Las Vegas, county of Clark, State of Nevada. On the morning of the 14th day of December, 1943, defendant, Wells Inc., was engaged in operating a fleet of trucks for the hauling of ore along and upon U.S.

highway 95, extending in a north-westerly direction from the city of Las Vegas, Nevada. On the said 14th day of December, 1943, William Long was employed by defendant, Wells Inc., as a truck driver; about 6:30 o'clock a.m. of said day defendant William Long, acting within the scope of his employment as a truck driver for the defendant Wells Inc., then and there drove and operated a truck controlled and operated by the defendant Wells Inc., along and upon U.S. highway 95, ten miles, or thereabouts, in a north-westerly direction from Las Vegas, Nevada; that on the said 14th day of December, 1943, at about 6:30 o'clock a.m., the plaintiffs, Flora Marie Shoemake and her son John Alley Shoemake, were riding with her mother-in-law and her husband, Kenneth C. Shoemake, and were proceeding north and north-westerly from Las Vegas, Nevada, on highway 95, at or about nine or ten miles from the city of Las Vegas, when the 1936 Chevrolet in which they were riding was involved in a collision with the truck driven by William Long, who was acting within the scope of his employment as a truck driver for the defendant, Wells, Inc.

As a result of the collision Kenneth C. Shoemake suffered a badly crushed chest and internal injuries and also suffered head injuries and a deep gash posterior to his left eye, together with great physical and mental shock and as a result of said injuries, Kenneth C. Shoemake died in Las Vegas, Nevada, December 14, 1943. Further as a result of the collision Flora Marie Shoemake was thrown violently from the Chevrolet automobile in which she was riding and suffered injuries, great shock to her nervous system, and mental pain and suffering.

The plaintiff, Flora Marie Shoemake, and plaintiff John Alley Shoemake, are respectively the surviving wife and child of Kenneth C. Shoemake, deceased, and are the next-of-kin and only heirs-at-law of said Kenneth C. Shoemake, deceased.

The answer sets forth "that the defendants were at

all times mentioned in the complaint, and at the time of answering, agents and employees of the Defense Plant Corporation, a subsidiary of the Reconstruction Finance Corporation of the United States and as such were not suable as sole defendants in this action; that the parent Defense Plant Corporation was not joined as a party defendant and for that reason the Court had no jurisdiction of the action and for that same reason the two causes of action plead in the complaint did not state facts sufficient to constitute a cause of action." These defenses were stricken upon demurrer and defendants answered, denying any negligence on their part, and the defense of contributory negligence having also been stricken upon the demurrer, defendants alleged that the accident in which the said Kenneth C. Shoemake sustained injuries from which he died, was caused solely by the negligence of said Kenneth C. Shoemake. Upon trial and submission of the case to the jury a verdict was returned against defendants in the sum of $20,000 on plaintiffs' first cause of action, and $6,050 on plaintiffs' second cause of action. Judgment was therefore entered upon the verdict plus $465.05 costs.

Defendants' motion for a new trial was denied and this appeal is prosecuted from the judgment rendered upon the verdict of the jury and from the denial of defendants' motion for a new trial.

A number of errors are assigned within the general one, that the trial court erred in overruling defendants' motion for a new trial. The first two, which can be considered together, go to the action of the court in overruling defendants' general demurrer to the complaint, and in sustaining plaintiffs' demurrer to the answer.

(1) Defendants contend that their defense properly raised the question of suability of an instrumentality of the federal government.

We have given careful attention to the contention of defendants that their defenses raised the question of the suability of an instrumentality of the federal government, and in our opinion, it clearly appears from the

authorities submitted by defendants that there is no question of the suability of Defense Plant Corporation, and no question of the suability of the defendants, either separately or jointly with Defense Plant Corporation, assuming an agency relationship to have existed, as alleged by defendants. We are convinced, however, there was, in fact, no agency relationship between the defendants, or either of them, and Defense Plant Corporation, as clearly appears from the testimony of J. W. Wells, President of Wells, Inc., Folios 300–302 of the Transcript. Questions propounded by V. Gray Gubler, attorney for plaintiffs, were answered as follows:

"Q. Under the agreement by which you were operating on December 14, 1943, was it or was it not, Mr. Wells, agreed that Wells, Inc., should be wholly responsible for the conduct of their drivers and the management of their drivers? Yes. Yes, I think that is so.

"Q. Assuming, of course, that there was actionable negligence or other legal liability for the conduct of those drivers. A. I don't know whether the contract specifically states that, but I think that is correct.

"Q. Who hired the defendant, William Long? A. He was hired originally in Reno by my brother, R. C. Wells. He worked there for a considerable time, perhaps a month, as a student, and before he was allowed to come to Luning where he took over one of these trucks.

"Q. And as an employee of the Company he was solely responsible to and solely under the supervision and management of the defendant, Wells, Inc.? A. That is correct.

"Q. And was subject to the supervision of no other corporation, no other person other than his employer, Wells, Inc.? A. That is correct.

■ This testimony, which was the only testimony on the point, except as further substantiated by other testimony of the witness J. W. Wells, clearly shows that defendant Wells, Inc., was an independent contractor, managing independently the operation of the trucks in question, and that neither defendants, or either of them,

were servants and/or agents of Defense Plant Corporation.

■ The law is established beyond question, that one for whom services are performed by an independent contractor is not liable for the negligence or other delict or tort of such independent contractor.

The rule is well stated, 35 Am.Jur. page 967, sec. 539: "Power of Selection and Control as Determining Factor:—One of the tests of the existence of the relation of Master and servant as a basis for holding the master liable to third persons for the wrongful acts of the servant, is the power of the alleged master to select and discharge the servant. It has been held that where a person may be compelled by law to employ a particular individual in a given matter, he is not to be held liable for the delinquencies of the quasi employee. However, the relationship may exist, giving rise to liability for acts of another, notwithstanding the law restricts the employer's selection of employees to a limited class."

■ The right of selection is the basis of the responsibility of a master or principal for the act of his agent. No one can be held responsible, as a principal, who has not the right to choose the agent from whose act the injury flows.

"The relation between parties to which responsibility attaches to one, for the acts of negligence of the other, must be that of superior and subordinate, or, as it is generally expressed, of master and servant, in which the latter is subject to the control of the former. The responsibility is placed where the power exists. Having power to control, the superior or master is bound to exercise it to the prevention of injuries to third parties, or he will be held liable. The responsibility attaches to the superior, upon the principal qui facit per alium facit per se. (Who acts through another acts for himself.) To determine the responsibility, therefore, it is necessary to ascertain whether the relation existing

between the party charged and the party actually committing the injury, be in fact that of superior and subordinate, or master and servant. 'Unless the relation of master and servant exist between them,' said Coleridge, J., in Milligan v. Wedge, 'the act of one creates no liability in the other.' 12 Adol. & Ellis, 737. 'The rule of respondent superior,' said the Court of Appeals of New York, in Blake v. Ferris, 'as its terms imply, belongs to the relation of superior and subordinate, and is applicable to that relation, wherever it exists, whether between principal and agent, or master and servant, and to the subjects to which that relation extends, and is coextensive with it, and ceases when the relation itself ceases to exist.' " 1 Selden, 48.

By applying the test thus laid down to the relation existing between Wells, Inc., on the one hand, and Defense Plant Corporation and/or the Reconstruction Finance Corporation on the other, the question of liability will be easily solved. The relation between them wants one of the most essential features of the relation between master and servant. Something more than the mere right of selection on the part of the principal, is essential to that relation. That right must be accompanied with the power of subsequent control in the execution of the work contracted for. In the present case, that power was wanting, and, of course, the relation to which it was essential did not exist. In the instant case, under the agreement by which Wells Inc. operated, it was agreed that Wells Inc. should be wholly reponsible for the conduct and management of their drivers. The driver, as an employee of Wells Inc. was solely responsible to and solely under the supervision and management of Wells Inc. and was subject to the supervision of no other corporation, no other person other than his employer, Wells Inc. For a full discussion of the general doctrine above stated, see Boswell et al. v. Laird et al., 8 Cal. 469–499, 68 Am.Dec. 345; Byrne v. Kansas

City, Ft. S. & M. R. Co. et al., 6 Cir., 61 F. 605, 24 L. R.A. 693.

(2) Defendants contend that the second cause of action was improperly brought. The question presented is whether, under the facts disclosed in the complaint the action can be maintained only by an administrator of the estate, and further that the action must be predicated upon sec. 9194, N.C.L.1929, or not at all.

■ The common law afforded no remedy in damages for a wrongful death. Whatever standing plaintiffs have in the present case must be found in the statutes of Nevada. The remedy, being wholly statutory, is exclusive. The statute provides the only measure of damages, and designates the only person who can maintain such an action. Salmon v. Rathjens, 152 Cal. 290, 92 P. 733.

The first cause of action is an action for the wrongful death of Kenneth C. Shoemake, brought by Flora Marie Shoemake, the surviving wife of Kenneth C. Shoemake, and as guardian ad litem of John Alley Shoemake, the sole surviving child of Kenneth C. Shoemake, deceased.

The second cause of action is for personal and property damages suffered by plaintiff, Flora Marie Shoemake, resulting from defendants' negligence independent of damages accruing by reason of her husband's death. Section 9194, N.C.L.1929 reads as follows: "Liability For Death by Wrongful Act. * * * Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof then, and in every such case, the persons who, or the corporation which would have been liable if death had not ensued shall be liable to an action for damages notwithstanding the death of the person injured; and although the death shall have been caused under such circumstances as amount in law to a felony."

Section 9195, N.C.L. Supplement 1931–1941, reads:

"The proceeds of any judgment obtained in any action brought under the provisions of this chapter shall not be liable for any debt of the deceased; provided, he or she shall have left a husband, wife, child, father, mother, brother, sister, or child or children of a deceased child; but shall be distributed as follows:

"If there be a surviving husband or wife, and no child, then to such husband or wife; if there be a surviving husband or wife, and a child or children, or grandchildren, then, equally to each, the grandchild or children taking by right of representation; if there be no husband or wife, but a child or children, or grandchild or children, then to such child or children and grandchild or children by right of representation; if there be no child or grandchild, then to a surviving father or mother; if there be no father or mother, then to a surviving brother or sister, or brothers or sisters, if there be any; if there be none of the kindred hereinbefore named, then the proceeds of such judgment shall be disposed of in the manner authorized by law for the disposition of the personal property of deceased persons; provided, every such action shall be brought by and in the name of the personal representative or representatives of such deceased person; and provided further, the court or jury, as the case may be, in every such action may give such damages, pecuniary and exemplary, as shall be deemed fair and just, and in so doing may take into consideration the pecuniary injury resulting from such death to the kindred as herein named."

Section 8554, N.C.L. Supplement 1931–1941, reads: "When the death of a person not a minor is caused by the wrongful act or neglect of another, his heirs, or his personal representatives for the benefit of his heirs, may maintain an action for damages against the person causing the death, or, if such person be employed by another person who is responsible for his conduct, then also against such other person. If such adult person have a guardian at the time of his death, only one action can

be maintained for the injury to or death of such person, and such action may be brought by either the personal representatives of such adult person deceased for the benefit of his heirs, or by such guardian for the benefit of his heirs as provided in section 54. In every action under this and the preceding section such damages, pecuniary and exemplary, may be given as under all circumstances of the case may be just."

No pretense to originality is made by the writer in the interpretation and application of the sections quoted. They were reviewed, discussed and applied by Judge Farrington in Perry, Administrator, v. Tonopah Mining Co. of Nevada, D.C., 13 F.2d 865, 870. Pardini v. City of Reno, 50 Nev. 392, 263 P. 768.

The conclusion reached in Perry's case is well stated as follows:

"Our Practice Act confers a right of action on the parent for the death of a minor child; upon the guardian for the death of his ward, if of lawful age; *upon the heirs or personal representatives for the death of a person not a minor.* (The italics are ours.)

"These provisions, however, do not cover the whole field of injuries which may result from wrongfully caused death. For instance, a boy of 20 years may at the same time be maintaining a wife, supporting his parents, and assisting his brothers and sisters. In such a case all would be suffering pecuniary injury by reason of his death, but there would be no recovery by the widow, brothers, and sisters, except under sections [9194] and [9195] in an action by the personal representative. Again, the death might be caused by acts so willful, wanton, and reckless as to demand exemplary damages; such damages are provided for in section [9195] only, and cannot be recovered unless action is brought by a personal representative of the deceased under that section."

See note in Bond v. United Railroads, Ann.Cas.1912C, 67; Pardini v. City of Reno, supra; Perry v. Tonopah

Mining Co., supra; Nordyke v. Pastrell et al., 54 Nev. 98, 7 P.2d 598.

The averments of the complaint in this case conform to the reasoning employed by Judge Farrington in arriving at the conclusion that our practice act confers a right of action upon the heirs or personal representatives for a person not a minor. A great array of authorities might be cited in support of our conclusions, but the question as to the only persons who can maintain an action is so well settled in Perry v. Tonopah Mining Co., supra, that we do not consider it necessary to encumber this opinion with further citations.

Section 8595, N.C.L.1929, as amended, prescribes what causes of action may be united as follows:

"Plaintiff may unite several causes of action in the same complaint, when they all arise out of: * * *

"7. Injuries to property; or

"8. Claims arising out of the same transaction, or transactions connected with the same subject of action, and not included within one of the foregoing subdivisions of this section. * * * "

The action of the trial court in overruling the demurrers should be sustained and it is so ordered.

Further, a party interposing a demurrer and relying upon any defect in the complaint as to nonjoinder of parties, or uncertainty, must let final judgment be entered upon his demurrer, if he desires to continue to avail himself of it after the demurrer is overruled. If he answers after his demurrer is overruled, he waives his right to rely upon his demurrer. Lonkey & Smith v. Wells, 16 Nev. 271; Robison v. Mathis, 49 Nev. 35, 234 P. 690; Peri v. Jeffers, 53 Nev. 49, 292 P. 1, 293 P. 25, 298 P. 658.

(3) We come now to assignment of error No. 4. "The ten instructions proposed by the defendants and rejected by the court." All of the rejected instructions, with the exception of two, were properly refused for the reason that they were covered by other instructions

given by the court. The tendered instruction, folio 100, was properly refused. It contains an incorrect statement of the law in that it is an instruction that there is no liability unless a particular accident could in the exercise of ordinary care be anticipated. In Konig v. Nevada-California-Oregon Ry. Co., 36 Nev. 181, 135 P. 141, 142, the court stated as follows: "Where the first wrong done is the probable cause of an injury or accident, and the final injurious consequences are such as might have been foreseen, the consequence, as well as every intervening result, is the proximate result of the first wrongful cause."

Instruction, folio 106, 107, is an instruction on comparative negligence, the rejection of which is complained of, was properly refused. Comparative negligence is not the law of Nevada, except in actions by a mine employee for injuries, in which cases Nevada statutes substitute the rule of relative or comparative negligence for the common law rule of contributory negligence. Peterson v. Pittsburg Silver Peak Gold Mining Co., 37 Nev. 117, 140 P. 519; Prescott & A. C. R. Co. v. Rees et al., 3 Ariz. 317, 28 P. 1134; Denver & R. G. Co. v. Maydole et al., 33 Colo. 150, 79 P. 1023; 45 C. J. 1036.

Defendants' fifth assignment of error is based upon the action of the court in sustaining plaintiffs' demurrer to defendants' allegation of contributory negligence. The allegation reads as follows: "For a further, separate and fifth defense defendants allege: That the injuries, if any, and damages, if any, sustained by plaintiffs as plead in the complaint or otherwise, were contributed to by the negligence of Kenneth C. Shoemake in his operation of the motor vehicle described in plaintiffs' complaint to which was attached and was then and there being towed a certain homemade, two-wheel, unweildy trailer."

Plaintiffs contended that the attempted allegation of contributory negligence was insufficient and demurrable for the reason that it did not sufficiently set forth the

alleged negligence of deceased and for the reason that it contained no allegation of proximate causation.

Defendants elected not to replead and the case went on regularly for trial on defendants' denial of liability, and among other defenses upon their second and further defense, as contained in the amended answer.

Contributory negligence is an affirmative defense which must ordinarily be specifically pleaded and proved by a preponderance of the evidence. Smith v. Odd Fellows Bldg. Ass'n, 46 Nev. 48, 205 P. 796, 23 A.L.R. 38; Konig v. Nevada-California-Oregon Ry. Co., 36 Nev. 181, 135 P. 141.

Before contributory negligence can bar recovery, it must appear that such negligence was a proximate cause of the injury, although it need not be the sole proximate cause. Crosman v. Southern Pacific Co., 44 Nev. 286, 194 P. 839.

Contributory negligence must be alleged in the same manner and with the same degree of particularity, that negligence must be alleged as a ground for recovery. The act or omission must be stated, must be characterized as negligent, and must be shown to have contributed to the injury complained of. Freisheimer v. Missoula Creamery Co., 64 Mont. 443, 210 P. 329.

Defendants' second and further defense, folios 51–53, under the following authority might well be held to have raised the question of contributory negligence. "Contributory negligence is sufficiently pleaded where a cross-complaint filed by defendants in which they seek affirmative relief, alleges that the collisions referred to in the complaint and the consequent damages were due directly and solely to the negligence of the plaintiff." All pleadings and issues submitted by them were necessarily to be considered in their entirety. 2 Bancroft Code Pleading, 1423; Grover et al. v. Morrison, 47 Cal. App. 521, 190 P. 1078.

5. The next assignment of error is the contention that reversible error was committed in the giving of

instruction No. 44, folio 1313, excepted to by defendants, folio 1024, that contributory negligence of the deceased would bar a recovery of the plaintiffs' first cause of action. This instruction was excepted to by the defendants as not within the issues of this case, a demurrer thereto having been sustained.

■■ Defendants alleged and attempted to prove that the injuries were caused solely by the negligence of the deceased. The case went to trial on opposing claims of negligence and instruction No. 44 served to greatly reduce the burden of proof placed upon defendants and increased their chances of a successful defense. Whenever a question of contributory negligence arises "upon a state of facts in regard to which reasonable men might honestly differ" it ought to be "submitted to the jury." Smith v. Odd Fellows Bldg. Ass'n, 46 Nev. 48, 205 P. 796, 798, 23 A.L.R. 38.

■■ Entertaining the views, we do, contrary to the contention of the defendants, that instruction No. 44 is not erroneous, we cannot say that there is any material conflict in the instruction complained of; all instructions to a jury should be read in the light of each other and considered in their entirety when determining whether a portion of the instruction is erroneous, or by reason of a conflict, or otherwise, is calculated to mislead the jury; and where separate instructions are sound in law, even though they may not be as complete as they might be made to be, but if read together they are consistent and state correct principles of law, and are not calculated to mislead the jury, they will not be disturbed as reversible error. Of course, where instructions are conflicting and either is erroneous in law and prejudicial to the rights of either party, such a conflict in instructions has been properly held to be reversible error. No such conflict, however, in our opinion, exists in the instruction complained of. Cutler v. Pittsburgh Silver Peak Gold Mining Co., 34 Nev. 45, 116 P. 418.

6. Defendants' sixth assignment of error is based

upon the action of the court in denying the motion for a new trial, and (2) that the court erred in admitting evidence on the expenditures for funeral expenses, and all other testimony as to the value of the personal property, including the automobile and trailer, and (b) that the damages awarded by the jury, were and are excessive.

Defendants are correct in their statement that the only measure of damages in an action under a wrongful death statute is limited to pecuniary loss suffered by the heirs of the person killed, by reason of his death. The verdict on the first cause of action was for the sum of $20,000, and is limited to pecuniary loss suffered by heirs of the person killed, by reason of his death. A single lump sum finding on damages suffered by heirs from wrongful death and a single lump sum judgment is the only proper method of assessing damages, and whether it is divided among them after recovery or how it is divided, are matters of no concern to defendants. Rickards et al. v. Noonan, 40 Cal.App.2d 266, 104 P.2d 839. Robinson v. Western States Gas & Electric Co., 184 Cal. 401, 194 P. 39.

The verdict on the second cause of action of the plaintiff Flora Marie Shoemake, was for the sum of $6,050 for personal injuries. We will not prolong this opinion by further discussion of errors assigned by defendants. We have examined all of them and find them to be without merit. It is undisputed that Kenneth C. Shoemake, deceased, was the husband of plaintiff Flora Marie Shoemake and the father of the plaintiff John Alley Shoemake, the only son of deceased; and it is also undisputed that deceased was born December 23, 1913, and that he would have been thirty years of age on the birthday next following his death. It is also undisputed that plaintiff Flora Marie Shoemake was 23 at the date of her husband's death and that she would be 24 years old at her next and nearest birthday. The plaintiff, John Alley Shoemake was, at the date of his father's death,

nearing 5 years of age. The testimony that deceased had a life expectancy of 35.33 years, and that Flora Marie Shoemake had a life expectancy of 39.49 years, was also undisputed. According to the evidence of plaintiff which was undisputed, deceased was of an industrious disposition and worked at all times during his married life with plaintiff Flora Marie Shoemake, and contributed all of his earnings to the upkeep of his family, and to the purchase of a farm and equipment for his family. When the parties were first married deceased was working for a lumber company, earning $34 a week. He later worked on the farm he was buying and worked for various companies enumerated in the testimony for wages ranging from $45 a week and up. While working on the farm deceased was able to earn a comparable livelihood and at the time of the collision in which he suffered the injuries from which he shortly died, deceased was travelling with his family to the Northwest, where he expected to work in war industry. The jury allowed the sum of $20,000, or $566.10 per year during the life expectancy, to-wit, 35.33 years.

In determining whether the award of damages is excessive or not, the court should consider whether the award is fair and reasonable, and in the exercise of sound discretion, under the facts and circumstances of the particular case; and the mere fact that the verdict is a large one is not conclusive that it is the result of caprice, passion, prejudice, sympathy or other consideration not found in the evidence; nor is the fact that juries in other similar cases have fixed a much lower amount as damages controlling on the question of excessiveness. A calculation based on decendent's earning capacity for his life expectancy furnishes a basis for an estimate to be considered, and to this should be added the proved value of services, if any, of decendent to his beneficiaries, which they might reasonably have received from him and which can only be supplied by the services of others for compensation. A statute limiting the amount of

damages recoverable is a mere limitation, and not a criterion as regards excessiveness. 25 C.J.S., Death, sec. 116, p. 1270.

In Morgan v. Southern Pac. Co., 95 Cal. 501, 30 P. 601, the court said: (Page 508 of 95 Cal. and page 602 of 30 P.) "The amount of the verdict is certainly quite large,—larger than we, if sitting as a jury, would have felt it our duty to give. But that consideration alone is not sufficient to warrant us in disturbing the verdict. There is no absolute rule in such a case, and about all that can be safely said on the subject may be found in the opinion of the court in Aldrich v. Palmer, 24 Cal. 513, and the cases there cited. The general conclusion, as nearly as can be formulated, is as there stated, namely, that a verdict will not be disturbed because excessive, 'unless the amount of the damages is obviously so disproportionate to the injury proved as to justify the conclusion that the verdict is not the result of the cool and dispassionate discretion of the jury.' " Redfield v. Oakland Consolidated St. Ry. Co., 110 Cal.277, 42 P. 822.

The personal injuries to plaintiff Flora Marie Shoemake as set forth in par. II of her second and separate and further cause of action, were as follows:

"* * * That as a further direct and proximate result of the negligence of defendants as aforesaid this plaintiff was thrown violently from the said Chevrolet automobile in which she was riding and suffered injuries as follows,. to-wit: (a) A cut one-half inch in length, or thereabouts, at the outer canthus of the left eye, (b) a cut one-half inch, or thereabouts, in length above the outer edge of the left eyebrow, (c) a cut three-fourths inch, or thereabouts, in length over the angle of the left mandible and a cut posterior to the left ear, (d) a broken upper left incisor, (e) wrenched muscles in the costal and lumbar area of the back, (f) great shock to her nervous system and great shock and mental pain and suffering.

"That as a further direct and proximate result of the

negligence of defendants as aforesaid, plaintiff has become extremely nervous and suffers periodic attacks of vertigo and faintness, sleeps poorly, has irregular menstrual periods, almost daily suffers shooting pains in the frontal and temporal area of her head, has spasticity of the muscles in her lower back and suffers pain in the lower costal and lumbar area of her back on exertion or work of any nature; that as a direct and proximate result of the negligence of defendants as aforesaid, plaintiff has suffered permanent injury in the following, to-wit:

"(a) Said cuts hereinabove described have healed into permanent scars causing plaintiff permanent disfigurement.

"(b) Broken upper left incisor.

"(c) Plaintiff is informed and believes and upon such information and belief alleges that her irregular menstrual periods, loss of sleep, shock and mental and physical pain and suffering, extreme nervousness and attacks of vertigo and faintness, and spasticity of the lumbar muscles of the back all resulting directly and proximately from the negligence of defendants as aforesaid will continue for an indefinite period."

These injuries were apparently proved to the satisfaction of the jury by the testimony of Flora Marie Shoemake, and of Dr. Robert L. Meador.

 We are unable to say after a careful review of the testimony, that damages awarded by the jury "appear excessive or that they appear to have been given under the influence of passion or prejudice," and such appears to have been the conclusion of the learned judge who denied defendants' motion for a new trial.

The judgment and order denying the motion for a new trial should be affirmed. It is so ordered.

HORSEY, J., concurs.

Justice TABER participated in the hearing of this case but passed away before the opinion was completed.