PERCY L. JEFFERSON, AKA P. L. JEFFERSON, APPELLANT, *v.* JAMES IRVING JOINER, SHARON DYAN JOINER, AND VALORIE JOINER, INFANTS, BY BOBBIE JOINER, THEIR GUARDIAN AD LITEM, AND BOBBIE JOINER, RESPONDENTS.

No. 4131

April 10, 1959                    337 P.2d 622

*Harry E. Claiborne,* of Las Vegas, for Appellant.

*Robert Callister,* of Las Vegas, for Respondents.

# OPINION

By the Court, McNamee, J.:

This action is brought to recover damages for the wrongful death of Walter Joiner. The respondents, plaintiffs below, are the surviving children and the widow of decedent.

Trial was by the court without a jury and judgment was entered in favor of each minor in the sum of $5,000 and in favor of the widow in the sum of $10,000, a total of $25,000 against the defendant.

Appeal is from said judgment and from the order refusing a new trial.

Decedent was 24 years old at the time of his death. He had married his wife December 14, 1951. The three children, co-plaintiffs herein, were, at the time of the trial, aged 6, 3, and 2 years.

After the marriage the couple lived in Las Vegas until February 1953 when decedent entered the service and moved to California. His wife joined him there two months later and remained with him in California until his discharge from the service in 1955. They then returned to Nevada. Shortly thereafter and during the same calendar year deceased became mentally ill and was committed to a hospital in California where he remained, except for occasional weekends, until shortly before his death. At the time of his death he had been in Las Vegas for 30 days of a 90-day probational release from the hospital.

On August 1, 1956 decedent had been several times in and out of a night club in Las Vegas known as the Brown Derby. He had been ejected forcibly by the proprietor, defendant herein, at least twice for being intoxicated and obnoxious, and during one of their encounters, he tore defendant's shirt. When he returned the last time he severely injured defendant with a knife while being ejected. Thereupon defendant shot and killed decedent.

The court found that death of decedent was the result

of the willful, intentional, and wanton act of the defendant. While we might have reached a different conclusion in deciding this controverted issue, there is sufficient evidence to sustain this finding of the court.

We are thus concerned only with the matter of damages.

Plaintiffs prayed for both pecuniary and exemplary damages, which they were authorized to do under NRS 12.090. The court in its oral decision said: "Now damages in this case is a difficult problem. It is true from the evidence that the man might have been or was mentally deranged and what he would contribute to his family in the future is uncertain, or what they may have been deprived of as a result of his death we will never know; he might have been shortly restored to health and mental competency and certainly the probability that he would have been affected for a long time, if not for the rest of his life, his ability to earn or his capacity to provide for his family might have been affected by that for a long time or for the rest of his life, we don't know.

"My finding is that the plaintiff, Bobbie Joiner, the widow of the decedent is entitled to and shall have and recover the sum of ten thousand dollars; that each of the children shall have and recover from the defendant five thousand dollars each."

Thereafter it caused to be entered judgment in accordance with said decision without specifying whether the several awards were for pecuniary or exemplary damages or whether they included both.

Because of the mental condition of decedent, he had no income from earnings but at the time of his death he was drawing a pension of $150 per month and his wife was receiving $80 per month for the support of herself and the three children. Ever since decedent's death his widow has received death benefits from social security and the Federal Government in the sum of $195 per month for her support and for the support of the children, and such sum will continue until the children become of age. The record is silent as to the amount of any contribution decedent made to his family prior

to his commitment, the decedent's life expectancy, and the prognosis of his mental condition. With respect to his pension, the widow testified that the hospital kept the $150 payments which decedent received while he was in the hospital, but when he got out the payment thereafter was made to him and he in turn gave the money to her.

The only evidence relative to services rendered to his family is the following testimony of his widow:

"Well, he was a normal husband, he loved the children very much and we would often—I mean he would do a lot of things around the house and he was good at working around the house and he would often go shopping and he played with the kids a lot and tell them little stories and he often bought things for them all the time. * * * Such as toys and then he would buy them something if it was not any more than just a little toy."

It is apparent from the foregoing that decedent's family received only $80 a month for their support from the time of his commitment until his death, plus the $150 pension money which accrued while he was out of the hospital for the 30-day period prior to his death.

In Wells, Inc. v. Shoemake, 64 Nev. 57, 74, 177 P.2d 451, 460, a wrongful death case, this court said:

"In determining whether the award of damages is excessive or not, the court should consider whether the award is fair and reasonable, and in the exercise of sound discretion, under the facts and circumstances of the particular case; and the mere fact that the verdict is a large one is not conclusive that it is the result of caprice, passion, prejudice, sympathy or other consideration not found in the evidence; nor is the fact that juries in other similar cases have fixed a much lower amount as damages controlling on the question of excessiveness. A calculation based on decedent's earning capacity for his life expectancy furnishes a basis for an estimate to be considered, and to this should be added the proved value of services, if any, of decedent to his beneficiaries, which they might reasonably have received

from him and which can only be supplied by the services of others for compensation."

As stated before there is no evidence in the record upon which to calculate deceased's earning capacity as a sane man. There is no evidence from which to determine if decedent ever would have recovered mentally; and lastly there is no evidence of "proved value of services, if any, of decedent to his beneficiaries." On the other hand the record tends to show that the financial condition of the beneficiaries has improved since and as a result of the death of decedent.

Under these circumstances it would be error if the judgment for damages contained an award for pecuniary damages in excess of nominal damages. 25 C.J.S. Death, sec. 96, p. 1238.

The only possible justification for the judgment, then, would be as exemplary damages based upon purely nominal pecuniary damages. It is contended by the appellant that even as exemplary damages the judgment would be excessive. This question we need not determine. In our view it is not possible, in the light of the record, to read the judgment as an award of exemplary damages. That part of the decision of the trial judge quoted above indicates that he was concerned only or substantially with the problem of pecuniary damages. Nowhere in the record can we find an expressed intention on the part of the judge to award or take into consideration exemplary damages. The fact that the award to the widow was twice the award to each minor child would indicate that it was pecuniary and not exemplary damages with which the court was concerned. If, however, it was the intention of the trial court to award exemplary damages, the disproportion between nominal pecuniary damages and the total judgment is so great that an intention to make such an exemplary award must, under these circumstances, expressly appear, since it cannot reasonably be presumed.

We conclude that we cannot view this judgment upon the record before us as constituting an award of exemplary damages. As an award of pecuniary damages it is clearly excessive.

Judgment reversed and the case remanded for a new trial.

MERRILL, C. J., and BADT, J., concur.