**Buck WITT, Appellant,**

v.

**The UNITED STATES of America,**
**Appellee.**

**No. 18437.**

United States Court of Appeals
Ninth Circuit.

June 22, 1963.

Rehearing Denied July 29, 1963.

McAllister, Burns, Gustafson & Lock, and James W. Lock, Gresham, Or., for appellant.

John W. Douglas, Asst. Atty. Gen., Alan S. Rosenthal, and John C. Eldridge, Attys., Dept. of Justice, Washington, D. C., and Sidney I. Lezak, U. S. Atty., Portland, Or., for appellee.

Before JERTBERG and BROWNING, Circuit Judges and JAMESON, District Judge.

JERTBERG, Circuit Judge.

This is an appeal from the judgment in favor of the appellee, United States of America, entered by the District Court, and from an order of the District Court denying the motion of the appellant, Buck Witt, for rehearing.

The appellant sought damages under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2674 et seq.,[1] for damage to his property, certain mink, caused by the negligence of an employee of the United States flying an airplane over the appellant's mink ranch.

This Court has jurisdiction under Title 28 U.S.C.A. §§ 1291 and 1294.

The following agreed statement of facts appears in the pretrial order approved by counsel for the parties, and signed and entered by the District Judge:

"1. This action was brought under the Federal Tort Claims Act, 28 U.S.C. 1346(b).

"2. That plaintiff, Buck Witt, is a resident and inhabitant of the State of Oregon, and has, at all times relevant herein, been and is now engaged in the commercial raising and marketing of mink pelts; that his mink ranch is located approximately four miles south of Canby, Oregon.

"3. That 1/Lt. Richard Ballweber was, on and prior to May 8, 1961, a member of and a commissioned officer and pilot on active duty in the United States Army, one of the departments of defendant, assigned to duty in Headquarters First Reconnaissance Squadron, 16th SKYCAV, Second U. S. Army Missle Command, Fort Carson, Colorado.

"4. That during the afternoon of May 8, 1961, one of the aircraft owned and maintained by the Department of the Army, to-wit: A U1–A de Haviland Otter, bearing aircraft number 57–6133, made certain flights under the control and command of the said 1/Lt. Richard Ballweber in the vicinity of a sod airstrip owned and operated by Jack Lenhardt, said flights being to the east and north of said airstrip. That plaintiff's ranch is located approximately one mile northeast of said airstrip.

"5. That on May 5, 1961, the said 1/Lt. Ballweber was authorized and directed by his command at Fort Carson to fly said U1–A aircraft from Fort Carson to the United States

---

1. "§ 1346. United States as defendant.
\* \* \* \* \*
 "(b) \* \* \* the district courts \* \* \* shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under cir-

cumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."
"Title 28 U.S.C.A. § 2674:
 "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, \* \* \*."

Army Installation at Yakima, Washington, to deliver certain cargo to said Installation and to return to Fort Carson on or about May 8, 1961. That 2/Lt. Walter F. Wood and SFC J. G. Kuhn, personnel attached to the same Squadron as Lt. Ballweber, were ordered and directed to accompany Lt. Ballweber in aircraft No. 57–6133 from Fort Carson to Yakima, Washington and return on May 5 thru 8, 1961."

■ From our examination of the transcript of testimony, it is our view that the following findings of fact made by the District Court relevant to the issues before us are supported by substantial evidence:

"2. On May 8, 1961, one Ballweber was a 1st Lieutenant, a commissioned officer and pilot on active duty in the United States Army and assigned to duty at Fort Carson, Colorado.

"3. On May 5, 1961, a flight order was issued by the Commander of the Second U. S. Army Missile Command at Fort Carson, Colorado, directing Ballweber and one Sgt. Kuhn to fly an airplane from Fort Carson, Colorado to Yakima, Washington for the purpose of delivering certain cargo in support of a mission at Yakima, Washington, and that upon the completion of the mission said crew members were directed to return to their said station in Colorado on or about May 8, 1961. One 2nd Lieutenant Wood was part of the authorized crew of said plane which was under the command and direction of Ballweber.

"4. On May 6, 1961, said crew followed said directive order and flew said plane to Walla Walla, where the personnel stayed overnight, and then continued to the accomplishment of their mission as contained in said order on May 6. After completion of said mission, said crew, under the command of Ballweber, did not return to their station in Colorado, but,

on the other hand, flew said airplane in a southwesterly direction from Yakima for a distance of approximately 300 miles to the Oregon coast at Florence, a point which is approximately 80 miles due west of Eugene in said state. En route, said crew stopped at a remote, out-of-the-way airstrip known as Lenhardt airstrip approximately 4 miles south of Canby, Oregon, and approximately 180 miles southwest of Yakima, and there made arrangements whereby they could return from Florence and land on said airstrip that evening. That the said plane flight into Oregon had nothing whatsoever to do with the mission authorized by the flight order of the Commanding Officer in Colorado, but, on the other hand, was made primarily for the purpose of Ballweber visiting at his home, some three miles from said remote strip, and the said Kuhn visiting with his parents at their home in Florence, Oregon. Ballweber and Wood returned to said airstrip on the evening of the 7th, stayed overnight at the Ballweber home, and on the following morning made flights to other cities in that area and during the course of the day made many 'touch and go' flights on said airstrip, some of these flights being training flights for Wood and others being for the entertainment of non-military personnel.

\* \* \* \* \* \*

"7. At said time and place said Ballweber and Wood were not acting in the line of duty of their employment with defendant and were acting outside the course and scope of their employment with the Department of the Army. The testimony of the witness Wood and other evidence in the case, including, but not limited to, the 'cover-up' of the actual whereabouts of Ballweber in his report of his activities, convinces me that the deviation made by the crew was entirely outside and beyond a proper construction of the authority granted

by the order dated May 5, 1961 and that the crew of said aircraft were on a 'lark' of their own at the time of committing the negligent acts as aforesaid. Any flight plan which may have been in the minds of Ballweber and Wood was entirely unknown to their superiors and existed in their minds solely for the purpose of deviating from their orders and thus satisfy a natural desire to visit the homes of Ballweber and Kuhn.

\* \* \* \* \* \*

"9. The evidence in this case that Ballweber and Wood were not acting in the line of duty nor within the course or scope of their employment with the Department of the Army is substantial and more than adequate to overcome any inference which might be created by the fact that said persons were in the regular employment of defendant and that defendant owned the aircraft in question."

We have also reviewed the remarks of the District Judge made at the close of the arguments, which were incorporated by reference as part of the findings of fact. Included in such remarks are the following:

"Starting from the inception of this flight, he [Lieutenant Ballweber] was under what would appear to be special orders, which were service orders rather than training orders. He had a specific mission to perform, and that was to deliver this merchandise to the field area at Yakima and to return within a given period of time.

"True enough, the orders say that he is given discretion in carrying out his mission as to a variance in the flight, but that was in carrying out his service mission, as I view it, gentlemen, as distinguished from what the lieutenant would now attempt to say; that is, carrying out an associated mission, a training mission.

\* \* \* \* \* \*

"Now, there is an added feature in this case which was not involved in Sievers (Sievers v. United States [D.C.] 194 F.Supp. 608) or any of the other cases which have been raised by counsel. That is the theory of ratification by the payment by the Government of the expenses of the men on this trip and that no disciplinary action was taken by the Government against Lieutenant Ballweber.

"Ratification, gentlemen, requires the doing of an act when all of the facts are known. There is no evidence here that the Government knew this, the command itself, knew anything about what happened as of May 7th and 8th, the dates in question. As a matter of fact, the records rather carefully avoided the mention of this particular airfield and a mention of facts which might put the Government itself on notice that there was actually a deviation in the using of this little airstrip, which to me was obviously never designed for the purposes for which it was being used at the time."

Likewise, we find such findings supported by substantial evidence.

Appellant's specifications of error are:

I. "The trial court erroneously concluded that pilots Ballweber and Wood were acting outside the scope of their authority and not in the course of their employment and were on an independent 'lark' of their own May 8, 1961, when the flights which caused loss and damage to plaintiff's property occurred.

II. "The trial court erred in failing to hold that the defendant-appellee ratified the conduct of pilots Ballweber and Wood."

The law is well settled that the standard of government liability under the Federal Tort Claims Act is, with respect to both military and civilian employees, that imposed by the respondeat superior doctrine of the place where the act or omission occurred. Williams v.

United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955); Chapin v. United States, 258 F.2d 465 (9th Cir. 1958), cert. denied 359 U.S. 924, 79 S.Ct. 607, 3 L.Ed. 2d 627; Sievers v. United States, 194 F. Supp. 608 (Dist. of Oregon, 1961).

Appellant does not contend that the findings of fact of the District Court are clearly erroneous under Rule 52(a) Federal Rules of Civil Procedure, but his basic premise appears to be that Oregon law fastens vicarious liability in all cases and under all circumstances upon an employer if the employee, at the time of his negligent act, is doing something of benefit to or in furtherance of his employer's business. From this basic premise, appellant postures the following.

(a) The aircraft was the property of appellee;

(b) Lt. Ballweber was authorized and directed to pilot the aircraft on a mission from Colorado to Yakima, Washington and return;

(c) That Lt. Wood was a part of the authorized crew of said aircraft;

(d) That Lt. Ballweber had been authorized by appellee to give flight instruction to Lt. Wood;

(e) That during the course of the day of May 8, 1961 the aircraft under the control and direction of Lt. Ballweber made many "touch and go" flights on the Lenhardt airstrip, and that some of those flights were training flights for Lt. Wood; and

(f) That appellant suffered property damage proximately caused by some of the flights to and from the Lenhardt airstrip which occurred on May 8, 1961.

From the foregoing statement appellant reasons that the flight training received by Lt. Wood was of benefit to and in furtherance of the business of appellee and therefore concludes that under Oregon law appellee is liable for the damage sustained by appellant.

Simple justice might seem to require that the public bear losses inflicted on innocent private citizens by Air Force officers, using Air Force equipment. However, from our examination of the Oregon authorities, we are compelled to agree with the District Court that if the present case were presented for decision to the Supreme Court of the State of Oregon that Court would hold that the officers involved were not acting within the scope of their employment and that the appellee would not be liable for the damage caused by their negligent acts.

Appellant's first error is in his appraisal of Oregon law. The decisions of the Supreme Court of Oregon do not support appellant's basic premise that the sole test for determining whether an employee is acting within the scope of his employment is: Was the employee at the time of the commission of the negligent act doing something of benefit to, or in furtherance of, his employer's business?

In support of his basic premise appellant rests his case on Dalrymple v. Covey Motor Car Co., 66 Or. 533, 135 P. 91, 48 L.R.A.,N.S., 424 (1913) and Tyler v. Moore, 111 Or. 499, 226 P. 443 (1924). We have examined the opinions in those cases and while the decisions contain general language which might be construed to support appellant's contention, such general language is in the nature of obiter when considered in light of the facts set forth in the opinions. While we do not agree that those opinions lay down the rule for which appellant contends, we are satisfied that if such be true that later opinions of the Supreme Court of Oregon contain many modifications and exceptions to such rule.

In several cases where it might be argued that there was some incidental benefit to the employer because of the employee's conduct, the Supreme Court of Oregon has held the employee to be outside the scope of employment. In Hantke v. Harris Ice Machine Works, 152 Or. 564, 54 P.2d 293 (1936), it was held that a servant was not within the scope of his employment while on his way to work. In Allum v. Ball, 168 Or. 577, 124 P.2d 533 (1942), an employee who was on his way to get a chauffeur's license in order that he could drive the employer's lumber truck was held not to be in the scope of

his employment. In Crosby v. Braley & Graham, 171 Or. 72, 134 P.2d 110 (1943) the employee was on his way to the employer's used car lot in order to lock one of the cars. The Court held that he was not within the scope of his employment. In Jasper v. Wells, 173 Or. 114, 144 P.2d 505 (1943), it was held that the journey of the employee was outside of his employment although one of the purposes of the journey taken by the employee was to hire somebody to come to work for the employer.

In other cases the Supreme Court of Oregon has held that various types of deviation by employees from the scope of their employment, such as deviations as to time, place and purpose, operate to take the employee out of the scope of his employment. Jasper v. Wells, supra; Barry v. Oregon Trunk Railway, 197 Or. 246, 253 P.2d 260 (1953); Larkins v. Utah Copper Co., 169 Or. 499, 127 P.2d 354 (1942); Summerville v. Gillespie, 181 Or. 144, 179 P.2d 719 (1947).

In the instant case the District Court found two types of deviation by Lt. Ballweber from the scope of his employment; the first deviation being geographic, and the second deviation being an abandonment by Lt. Ballweber of the mission commanded by the appellee. In finding of fact 3, supra, the flight order issued by appellee directed a flight from Colorado to Yakima, Washington for the purpose of delivering certain cargo to Yakima, Washington and directed a return to Colorado on completion of the mission at Yakima. There appears no finding that the mission included the giving of flight instruction to Lt. Wood at any airstrip in Oregon.

In finding of fact 4, supra, the District Court found that upon completion of the mission at Yakima, the crew did not return to Colorado but flew in a southwesterly direction from Yakima a distance of approximately three hundred miles to Florence, Oregon; that enroute the crew of the aircraft stopped at the Lenhardt airstrip approximately one hundred eighty miles southwest of Yakima; that on their return from Florence the crew again stopped at the Lenhardt airstrip; and the following day "made flights to other cities in that area and during the course of the day made many 'touch and go' flights on said airstrip, some of these flights being training flights for Wood and others being for the entertainment of non-military personnel."

In finding of fact 7, supra, the Court found that the crew in making flights from the Lenhardt airstrip "were not acting in the line of duty of their employment with defendant" but "were acting outside the course and scope of their employment with the Department of the Army"; that the deviation made by the crew "was entirely outside and beyond the proper construction of the authority granted by the order dated May 5, 1961"; "that the crew of said aircraft were on a 'lark' of their own at the time of committing the negligent acts as aforesaid"; and that any flight plan into Oregon was unknown to appellee, and existed solely for the purpose of deviating from orders and to enable the crew to visit the parents of two members of the crew.

It is to be borne in mind that the findings of the District Court are fully supported by the evidence, and in several instances represent resolutions made by the trier of fact on conflicting evidence. Under such circumstances, the question whether an employee acts within the course of his employment and whether there has been a deviation from the employer's business is ordinarily a factual issue for the trier of facts. Larkins v. Utah Copper Co., supra; Barry v. Oregon Trunk Railway, supra.

It has been settled law in Oregon for many years that an employer is shielded from liability when an employee steps outside the scope of his employment and commits an act to serve his own interest or to gratify his own desires. French v. Cresswell, 13 Or. 418, 11 P. 62 (1886).

We have examined our decision in Murphey v. United States, 179 F.2d 743 (9th Cir. 1950) and find appellant's reliance upon that case misplaced.

Appellant's second error is his unwarranted assumption, contrary to the find-

ing of the District Court, that Lt. Ballweber was acting within the course and scope of his employment in giving flight instruction to Lt. Wood at the Lenhardt airstrip.

We now consider appellant's specification that "the trial court erred in failing to hold that the defendant-appellee ratified the conduct of pilots Ballweber and Wood."

Appellant predicates ratification primarily on the grounds that the appellee paid the expenses of the crew for gasoline, etc., on the trip and failed to take disciplinary action against Lt. Ballweber.

In the remarks of the District Court, made at the close of arguments, which were incorporated by reference as a part of the findings of fact, the District Court stated:

"There is no evidence here that the Government knew this, the command itself, knew anything about what happened as of May 7th and 8th, the dates in question. As a matter of fact, the records rather carefully avoided the mention of this particular airfield and a mention of facts which might put the Government itself on notice that there was actually a deviation in the using of this little airstrip, which to me was ob-

viously never designed for the purposes for which it was being used at the time."

An examination of the record reflects that Ballweber gave his superior officers a false account for failure of the crew to return directly from Yakima; that he did not report where the landings on May 8, 1961 were made; that the flights on May 7th and 8th were not logged in his report; and that the deviations on May 7th and 8th were concealed from superior officers.

■ We are fully satisfied that the District Judge properly concluded under Oregon law that appellant failed to establish ratification by appellee of the unauthorized conduct on the part of Lt. Ballweber. In Summerville v. Gillespie, supra, the Supreme Court of Oregon stated, at page 153 of the Oregon reports, 179 P.2d at page 723: "The doctrine of ratification has as its foundation, knowledge of all the facts." In Tauscher v. Doernbecher Mfg. Co., 153 Or. 152, 56 P.2d 318 (1936), the Supreme Court stated, at page 164 of the Oregon reports, at page 323 of 56 P.2d that "[t]here must be knowledge of the tortious act of the servant and an intention on the part of the master to ratify it."

The judgment of the District Court is affirmed.