ROBERT JOHN MEAGHER AND LEMBKE CONSTRUCTION CO. OF NEVADA, INC., APPELLANTS, v. DESMOND NORWOOD GARVIN AND OPAL FAY GARVIN, HUSBAND AND WIFE, RESPONDENTS.

No. 4694

April 21, 1964

391 P.2d 507

*Vargas, Dillon, Bartlett & Dixon* and *Alex. A. Garroway,* of Reno, for Appellants.

*Robert L. Gifford; Tad Porter; William R. Devlin,* of Las Vegas, for Respondents.

## OPINION

By the Court, THOMPSON, J.:

The appeal is from a judgment in a personal injury suit awarding Mr. and Mrs. Garvin (husband and wife, plaintiffs) damages totaling $143,255.40 against Lembke Construction Co. of Nevada and its agent Robert Meagher (defendants).

The accident giving birth to this case happened on June 17, 1960 at about 11:30 p.m. on the Tonopah-Las Vegas highway near the intersection of that highway with Smoke Ranch road. The highway runs in a north-south direction. It is a two lane, 26 foot wide highway, surfaced with black top, and is straight for a considerable distance in either direction from the accident scene. There was no posted speed limit. Mr. Garvin and his wife were traveling north in their passenger car toward Indian Springs at a speed of about 35 miles per hour. Mr. Garvin was driving and his wife was to his right in the front seat. They were following an unidentified car. One-quarter of a mile before the intersection of the highway with Smoke Ranch road, the driver of that car signaled his intention to turn left onto Smoke Ranch road by activating the blinking directional signal, which signal remained on until the turn at the intersection was made. Meanwhile a Lembke Construction Company pickup truck was approaching the intersection from the opposite direction (i.e., traveling south toward Las Vegas on the highway) at a speed of about 60 miles per hour. It was being driven by Virginia Sullivan who was not employed by Lembke. She had asked Meagher, a

superintendent for Lembke on the Sandia Base job, for a ride to Las Vegas, and Meagher accommodated her. Their trip started at Tonopah with Meagher driving. After they had passed through Beatty he became sleepy and Virginia Sullivan took his place at the wheel. As Miss Sullivan approached the mentioned intersection, the unidentified car preceding the Garvins, and coming from the south, made its left turn in front of her. She swerved to her right, onto a soft shoulder. The truck went out of control and coursed across the highway. The right front of the truck collided with the left front of the Garvin car. The point of impact was in the northbound traffic lane about 5 feet, 10 inches from the east side of the highway. The Garvin car was a total loss. These are the main facts of the accident. Other material evidence will be related as the assignments of error are separately considered.

1.   The first contention is that the judgment may not stand because the sole proximate cause of the accident was the negligent conduct of the driver of the unidentified car in turning left in front of the oncoming pickup truck. We are told that Sullivan was faced with a "sudden peril" and exercised due care in meeting an emergency situation. Thus the argument is offered that she was not negligent as a matter of law, and that the trial court erred in deciding otherwise. Though the record proof of her lack of due care is meager, it is not absent and, by review standards, qualifies as substantial evidence. Had the unknown car turned left without warning, perhaps the sudden peril doctrine would have persuaded the trial court that Sullivan was free from fault. Here, however, the driver's intention to turn was made known. His directional signal had been blinking for one-quarter of a mile before the Smoke Ranch road intersection. The Garvins in the following car had noticed that signal. Though there is no positive proof that the front directional signal of the unknown car was blinking, the trial judge could reasonably infer that it was from the fact that the rear signal was operating. Sullivan should have seen it and reduced her speed. She did not slow down, and could not control her truck when the

unknown car made its turn in front of her. On these facts it was permissible for the trial judge to conclude that the sudden peril doctrine was not applicable, (Rocky Mt. Produce v. Johnson, 78 Nev. 44, 55, 369 P.2d 198, 203), and that Sullivan failed to exercise due care in the circumstances. We find no merit in this assignment of error.

2. The second reason advanced to reverse the judgment against Lembke Construction Co. is that the record does not support the lower court's finding that Meagher was the company's agent for the purpose of making this particular trip. It is not necessary to relate all of the relevant evidence offered by each side on this point. The trial court's finding is amply supported by the statement of the vice-president of Lembke Construction Co. who submitted a report to the Nevada Industrial Commission, following the accident, in which he stated:

"Robert J. Meagher was employed as a superintendent on our project under construction for the Atomic Energy Commission at Cactus Flats near Tonopah, Nevada. As a superintendent, he had broad discretionary authority. This authority was to be exercised in the interest of the company. This authority extended to making periodic trips to Las Vegas in order to obtain materials and to discuss particular job problems with his superior. It had been the practice for this man to drive to Las Vegas after work on Friday and to meet with his superior on Saturday morning to discuss job problems. These trips were made in a company vehicle with the consent and knowledge of his employer.

"On Friday, June 17, 1960, Mr. Meagher was making such a trip to Las Vegas. On this trip he saw fit to give a ride from Tonopah to one, Virginia Sullivan, not a company employee. The transportation of anyone not an employee in a company vehicle is not considered in the interest of the company. Between Tonopah and Las Vegas, he turned over to Miss Sullivan the operation of the pick-up truck, and she was driving at the time the accident occurred."

None of the cases relied upon by the appellant Lembke

Construction Co. to sustain its contention contain evidence from the employer from which it may reasonably be inferred that the employee was acting within the scope of his employment when the accident happened. For this reason we do not find them persuasive. The trial judge was plainly justified in concluding that Meagher was the agent of Lembke Construction Co. in making the trip in question.

3. The next claim of error presents a problem of first impression in Nevada. So far as Lembke Construction Co. is concerned, its truck was being driven by an unauthorized person when the accident occurred. Sullivan was not its employee. The record does not show that Meagher (Lembke's employee) was negligent in placing at the wheel a substitute without skill or experience in the management of cars. Cf. Grant v. Knepper, 245 N.Y. 158, 156 N.E. 650, 54 A.L.R. 845. Nor has the Nevada legislature enacted an "owner's liability or permissive use" statute under which some courts would hold the owner liable on the facts here present. 36 So.Cal.L.Rev. 296, 112 A.L.R. 424, 88 A.L.R. 177, 83 A.L.R. 884, 61 A.L.R. 873. Therefore Lembke insists that it cannot be held liable to the plaintiffs here.

Case authority is split. See Restatement, Agency, 2d, appendix, § 241, 134 A.L.R. 974. In general terms we prefer the views expressed in the following cases: Whiteside v. Harvey, 124 Colo. 561, 239 P.2d 989; Farrell v. Pinson Transfer Company, 293 S.W.2d 170 (Ky. 1956); Keen v. Clarkson, 56 Ariz. 437, 108 P.2d 573; Cain v. Bowlby, 10 Cir., 114 F.2d 519. In each the owner was held liable under fact circumstances quite similar to those present here. We hold that when an employee, without the employer's consent, lets an unauthorized person drive the employer's car in furtherance of the employer's purpose, and the employee is present, the employer is liable for the negligence of the unauthorized

driver. We agree with Professor Mechem's candid observation, "* * * experience shows that drivers will let their friends drive the master's truck, in spite of all that can be done to prevent it, and that thus the risk of the substitute's careless driving becomes one of the normal risks of the business, to be borne by the master along with the others." Mechem—Outlines of Agency, 4th ed., § 385. We find no room for distinction between the present case and the one where a drowsy employee, within the scope of his employment, continues to drive, falls asleep at the wheel, and causes an accident. There the liability of the employer is clear. We believe that the employer's liability is equally clear here. As stated in Cain v. Bowlby, supra, "Defendant cannot be heard to escape liability on the ground that Knight was at the wheel while the agent in charge slept beside him in the cab." Our holding on this issue does not embrace the case where the employee is not present in the vehicle when the accident occurs, nor does it deal with the case where the trip in question is not within the scope of his employment.

The appellants direct our attention to a statement in Wells, Inc. v. Shoemake, 64 Nev. 57, 177 P.2d 451, "The right of selection is the basis of the responsibility of a master or principal for the act of his agent. No one can be held responsible, as a principal, who has not the right to choose the agent from whose act the injury flows." That language was used in Wells v. Shoemake, supra, to distinguish the legal relationship of principal and agent from that of one who has selected an independent contractor. It is inappropriate as applied to the case before us.

4. We turn now to consider the claim that the award of damages is excessive. The plaintiff wife was allowed $125,107.60 ($32,923.20 special damages and $92,184.40 general damages), and the plaintiff husband $18,147.80 ($647.80 special damages and $17,500 general damages).

Neither award "shocks our judicial conscience." Miller v. Schnitzer, 78 Nev. 301, 371 P.2d 824.[1]

Mrs. Garvin was a 58-year-old diabetic when this accident happened. The pattern of her life and that of her husband has been considerably changed by the tragic occurrence. In the language of one of her doctors, she sustained as "severe a fracture as one can get." Her main injury was a comminuted fracture of the lower third of her left thigh bone. The fracture lines extended into the knee joint. As a result her left leg is 2½ inches shorter than her right leg. Her left knee is stiff. Her hospitalization covered 17 months on four separate occasions during 1960, 1961, 1962 and 1963. She endured four operations. Additional surgery, (not amputation), is a medical probability. During hospitalization her diabetic condition posed problems of management. She also incurred a staphylococcus infection which did not respond to treatment. Her leg was still draining, three years after the accident, when the trial was held. The charge for her hospital care alone was $26,205.68. She incurred doctor bills of $6,475, and drug and ambulance expense of $242.50. The record is full of her pain and suffering. Her injury is permanent. We do not consider her award excessive.

Mr. Garvin sustained five broken ribs with consequent pain. He wore a rib belt for six weeks. He missed one week of work. From the accident until the trial, three years later, he managed the home, performed household

[1]NRS 41.170 provides, "In cases where a wife sustains personal injuries by reason of the negligence of another, suit may be brought by the husband and wife jointly or separately at their option. When brought jointly, damages shall be segregated and those damages assessed by reason of personal injuries and pain and suffering shall be awarded to and belong to the wife, and damages assessed for loss of services and for hospital and medical expenses and other care shall be awarded to the husband. In cases where the wife sues separately, all damages sustained by the wife shall be awarded to and belong to the wife." The award to the wife of $32,923.20 was for "hospital and medical expenses and other care." Under the statute that sum should have been awarded to the husband. No issue as to this is raised by the appeal. Another aspect of the statute is mentioned in Kennedy v. Kennedy, 76 Nev. 302, 352 P.2d 833. See also F. & W. Constr. Co. v. Boyd, 60 Nev. 117, 102 P.2d 627.

duties for himself and, of course, cared for his wife when she was at home. Her injury precluded sexual indulgence. In these circumstances we do not deem $17,500 to be an excessive award for the loss of his wife's services.

5.   Finally, it is contended that the trial court committed reversible error when it received, over objection, evidence of the plaintiffs' poverty and financial distress caused by the wife's huge medical bills. This evidence should not have been received. Had the case been presented to a jury the reception of such evidence would probably be considered prejudicial error. Waldroop v. Driver-Miller Plumbing & Heating Corp., 61 N.M. 412, 301 P.2d 521; Singles v. Union Pac. Ry. Co., 174 Neb. 816, 119 N.W.2d 680. Here the parties submitted their dispute to a court. The record shows substantial competent evidence to support the result as to liability and damage. On the showing made we deem the error harmless. NRCP 61; Caye v. Caye, 66 Nev. 78, 203 P.2d 1013, 211 P.2d 252; Duplantis v. Duplantis, 50 Nev. 234, 255 P. 1014; Rehling v. Brainard, 38 Nev. 16, 144 P. 167.

We affirm the judgment below as to liability and the total damage award, but remand with direction that the award of damages be redistributed in accordance with NRS 41.170, viz., to the plaintiff Opal Fay Garvin the total sum of $92,184.40 general damages, and to the plaintiff Desmond Norwood Garvin the total sum of $51,071, which latter figure includes $32,923.20 for his wife's medical expenses and other care.

BADT, C. J., and McNAMEE, J., concur.