NATIONAL CONVENIENCE STORES, INC., DBA STOP N' GO MARKETS OF NEVADA, INC., STOP N' GO MARKETS OF NEVADA, INC., NO. 0142, AND STOP N' GO MARKETS OF NEVADA, INC., NO. 0522, APPELLANTS, *v.* FRED A. FANTAUZZI, INDIVIDUALLY, AND AS HEIR OF CAROL FANTAUZZI, DECEASED, AND AS HEIR OF JAY FANTAUZZI, DECEASED, AND JON FANTAUZZI, A MINOR, BY HIS GUARDIAN AD LITEM, FRED A. FANTAUZZI, RESPONDENTS.

No. 9126

September 29, 1978                    584 P.2d 689

[Rehearing denied November 9, 1978]

*Beckley, Singleton, DeLanoy, Jemison & Reid, Chartered,* Las Vegas, for Appellants.

*Cochrane, Lehman, Nelson & Rose,* Las Vegas, for Respondents.

## OPINION

By the Court, MANOUKIAN, J.:

This case concerns an accident which occurred on March 24, 1972, in Las Vegas, and the subsequent liability of an employer for acts performed by an individual in its employ. The employee, David Wagner, had been employed approximately one month before the accident by appellant National Convenience Stores, which was doing business as several Stop N' Go Markets of Nevada. He was assigned to do certain revamping work for several Stop N' Go Markets consisting in part of measuring shelving space. While traveling among the various stores, Wagner used his own automobile. Wagner's work shift was generally 7:00 a.m. to 3:00 p.m., and his normal work period was Monday through Saturday, inclusive. Two days prior to the accident, Wagner left work one hour early to measure the shelving, and on the way to the store, he stopped at several residences to pick up his wife and two friends to accompany him. Wagner worked on this assignment well past his normal working hours in order to accomplish the task.

Although March 24, the day of the accident, was scheduled as a working day for Wagner, he, in fact, had that day off due to arrangements made for him to work a double shift the next day. On the day of the accident, Wagner was driving his vehicle with the same individuals in it that were present two days before when he was measuring shelves. Wagner was heading toward a particular Stop N' Go Market to discuss work related matters with his supervisor pertaining to another day off when he remembered that he had forgotten to obtain the shelving measurements from one of the stores and announced to the passengers his intention to go obtain those measurements before resuming his original course. The passengers in Wagner's vehicle testified that they knew that he was going to measure shelf space at one of the stores.

While driving to the store, Wagner became engaged with another youthful driver in erratic driving characterized by witnesses as a "drag race." Wagner's car went out of control,

crossed the center line, and collided head-on with another vehicle. Carol Fantauzzi and her infant, Jay, died. Her child Jon received serious injuries.

The action for wrongful death was argued to the jury on the theory of *respondeat superior* incident to appropriate jury instructions.

Upon jury verdict, a judgment was entered against both Wagner and Stop N' Go. Appellants moved for judgment notwithstanding the verdict which was denied. This appeal follows that denial.

The single question before us is whether the trial court erred in permitting appellants to be held liable under the doctrine of *respondeat superior*. We turn now to consider the issue.

Appellants contend that the policy rationale for *respondeat superior* traditionally has been anchored on the concept of control but that modernly the justification is that vicarious liability is simply one risk of business enterprise. Prosser, *Law of Torts,* at 459 (4th ed. 1971); 2 Harper & James, *Law of Torts* (1956), at 1376–78; Hinman v. Westinghouse Electric Company, 471 P.2d 988 (Cal. 1970). These authorities provide a valuable analysis of the philosophical history of the *respondeat superior* doctrine, but we find it unnecessary here to adopt the purported modern trend. *Compare,* Meagher v. Garvin, 80 Nev. 211, 391 P.2d 507 (1964). Neither are we here disposed to adopt a rule of negligence without fault as relates to vicarious liability.

Acknowledging that one analysis of the policy underlying the doctrine of *respondeat superior* is that vicarious liability is simply one risk of the entrepreneur system, United States v. Romitti, 363 F.2d 662 (9th Cir. 1966); Farris v. United States Fidelity and Guaranty Co., 542 P.2d 1031 (Or. 1975); *compare, Meagher,* the term "control" has been applied to establish the master-servant relationship itself, the *sine qua non* of the *respondeat superior* doctrine. Succinctly stated, the employer can be vicariously responsible only for the acts of his employees not someone else, and one way of establishing the employment relationship is to determine when the "employee" is under the control of the "employer." Martarano v. United States, 231 F.Supp. 805 (D. Nev. 1964).

· In Wells, Inc. v. Shoemake, 64 Nev. 57, 64, 177 P.2d 451, 455 (1947), we stated:

> The relation between parties to which responsibility attaches to one, for the acts of negligence of the other, must be that of superior and subordinate, or, as it is generally expressed, of master and servant, in which the latter is subject to the *control* of the former. The responsibility is

placed where the power exists. Having power to control, the superior or master is bound to exercise it to the prevention of injuries to third parties, or he will be held liable. (Emphasis added.)

Premised on the use of the term "control" in that passage, respondents justifiably contend that Nevada's policy rationale for the doctrine of *respondeat superior* is grounded on the theory of control rather than on the entrepreneur theory. We agree. Once a master-servant relationship is established, usually through an analysis of control, the principal inquiry, as was made in the court below, is whether the tortious conduct occurred within the scope of employment.

Ordinarily tortious conduct by an employee in transit to or from work will not expose the employer to *respondeat superior* liability. This is known as the "going and coming" rule. Short v. United States, 245 F.Supp. 591 (D. Del. 1965); State v. Superior Court, in & for County of Maricopa, 524 P.2d 951 (Ariz. 1974); *see,* Annot. 52 ALR2d 287. An exception exists whereby an employee on some "special errand," although not during usual working hours, may nevertheless be considered within his scope of employment and under control of the employer. Boynton v. McKales, 294 P.2d 733 (Cal.App. 1956); *Hinman, supra.*

Appellants contend that Wagner was not on a "special errand" and cite as analogous cases Pesio v. Sherman, 172 N.W.2d 748 (Minn. 1969), and Church v. Ingersoll, 234 F.2d 176, *cert. denied,* 352 U.S. 879 (10th Cir. 1956). These cases are easily distinguishable, as in neither of the cited cases may it be reasonably inferred that the employee was acting within the scope of his employment when the accident occurred. The "going and coming" rule precluded assignment of the vicarious liability in both situations.

In the instant case, Wagner was assigned tasks which of necessity took him away from his normal place of employment. He was required to travel to the various Stop N' Go Markets in Las Vegas to obtain shelf measurements. Evidence also indicated that he had rather broad discretionary authority which included his working well past his usual working hours completing these assignments. Notwithstanding the fact of Wagner's unfortunate momentary indiscretion, we perceive no variance from this practice. This factual setting is not far removed from the facts and holding in Prell Hotel Corp. v. Antonacci, 86 Nev. 390, 469 P.2d 399 (1970), where we imposed employer liability for an employee's willful tort committed within the scope of his employment.

Had the accident occurred while enroute to discuss with his supervisor the possibility of a day off for the ensuing week, clearly Wagner would not have been within the scope of his employment. Wagner, however, temporarily abandoned his personal objective and turned to accomplish a task reasonably within the scope of his employment and of benefit to his master. State v. Gibbs, 336 N.E.2d 703 (Ind.App. 1975).

There was thus introduced sufficient evidence to present the case to the triers of fact. Whether an employee was engaged in the scope of employment when the tortious act occurred raises an issue of fact which is within the province of a jury. Witt v. United States, 319 F.2d 704 (9th Cir. 1963); Nelson v. Nelson, 166 N.W.2d 70 (Minn. 1969); Meyer v. Blackman, 381 P.2d 916 (Cal. 1963). The jury verdict is supported by substantial evidence and, thus, will not be disturbed. Shaw v. Beehive State Agric. Co-Op, 92 Nev. 611, 555 P.2d 958 (1976); Gerber v. Prunty, 92 Nev. 597, 555 P.2d 488 (1976).

The judgment for respondents is affirmed.

BATJER, C. J., and MOWBRAY and GUNDERSON, JJ., concur.

THOMPSON, J., dissenting:

This appeal from an order denying the motion of National Convenience Stores, Inc., for a judgment notwithstanding the verdict presents a question of law as to whether National's employee, David Wagner, was acting within the scope and course of his employment when a tragic accident happened. A jury found that Wagner had negligently driven his automobile proximately causing the death of two people and serious personal injuries to a third person. Damages in excess of three-quarters of a million dollars were assessed against Wagner and his employer, National. It was National's contention in presenting its motion for a judgment N.O.V., and now on this appeal, that it cannot be vicariously liable for the tort of Wagner since he was not acting within the scope and course of his employment when the accident happened. In my opinion the record supports this contention.

As to the liability of National the action was tried to the jury on the theory of respondeat superior.[1] Consequently, the evidence must reflect the right of National to control Wagner's conduct on the day when the accident occurred. Wells, Inc. v.

[1]The enterprise theory of liability, i.e., where the inquiry is whether the specific risk is one that may fairly be regarded as typical of or broadly incidental to the employer's enterprise, was not involved in this action. For further explanation of this theory, see Rodgers v. Kemper Construction Co., 124 Cal.Rptr. 143 (Cal.App. 1975); 2 Harper & James, The Law of Torts 1376 (1956).

Shoemake, 64 Nev. 57, 64, 65, 177 P.2d 451 (1947). This evidence does not exist.

National operates a chain of small Stop N Go grocery stores. National hired Wagner as a manager trainee. One of his tasks was to get shelf measurements of all of the Stop N Go stores. He used his own car in traveling from store to store.

March 24, 1972, the day of the accident, was Wagner's day off. While driving his car he remembered that he had not obtained the shelf measurements of a store located on Desert Inn Road, and decided to go there for that purpose. His employer, National, did not know of his decision to do so. As Wagner turned onto Desert Inn Road, he engaged in a drag race with a teenage driver who had pulled alongside, and soon thereafter Wagner lost control of his car and the tragic accident occurred.

The relation of master and servant did not exist when this accident happened because National had not advised Wagner that he could act for it on that day. Indeed, National had no idea that Wagner would spontaneously, on his day off, drive toward a Stop N Go store with the thought of doing some work there. Wagner did nothing for his employer on March 24, 1972. He never reached the Stop N Go store. His conduct cannot be said to have benefited National in any way.

As I see it, today's opinion allows the imposition of vicarious liability solely on the basis of an employee's assertion that, on his day off, he was going to do some work for his employer when the accident happened. I find no authority to support this proposition.