SUSAN R. EVANS, APPELLANT, *v.* SOUTHWEST GAS CORPORATION, RESPONDENT.

No. 22754

December 3, 1992                                    842 P.2d 719

*Easterly & Armstrong* and *Laurie Yott,* Elko, for Appellant.

*James M. Copenhaver,* Elko, for Respondent.

## OPINION

*Per Curiam:*

Appellant Susan Evans was injured when the school bus she was driving collided with a van owned by respondent Southwest Gas and operated by its employee, Russell Stokes. Evans filed a complaint against Southwest Gas (Southwest) seeking recovery for her injuries. The action never made it to trial, however, as the district court granted summary judgment to Southwest, ruling that Stokes was not acting within the course and scope of his employment when the accident occurred. Evans appealed.[1]

---

[1]Evans also moved for partial summary judgment on the issue of liability. Her motion was denied. Although briefed and argued, that ruling is not

## FACTS

The action underlying this appeal arose from a vehicular collision which occurred shortly before 5:00 p.m., April 1, 1987, on the spring Creek-Lamoille Highway (SR 227) in Elko County, Nevada.

Stokes was a service technician for Southwest. He was a salaried employee whose regular working hours were 8:00 a.m. to 5:00 p.m. Periodically, Stokes was on call to respond to emergencies, as he was on April 1, 1987. He was not paid to be on call, but received a minimum of two hours overtime compensation when he did respond to an emergency call. Southwest required its on-call technicians to take the company van home in order to respond to emergencies. The vehicle was equipped with tools, supplies and a radio for communication. A hand-held radio was also provided to Stokes in order to communicate with him when he was away from the van.

On April 1, 1987, Stokes completed his duties before 5:00 p.m. and left for home early in his employer's van. While traveling south on SR 227, Stokes crossed the center line onto the northbound lane. The van collided with a school bus driven by Evans and owned by the Elko County School District. Evans suffered personal injuries and Stokes died as a result of the accident.

Evans filed an action against Southwest, alleging vicarious liability for the actions of its employee, Stokes. Southwest moved for summary judgment, contending that Stokes was not acting within the course and scope of his employment at the time of the collision because he was off duty and not furthering a company purpose. The district court agreed and entered summary judgment in favor of Southwest. Evans appealed.

## DISCUSSION

*Standard of Review*

This court's review of a summary judgment is de novo. Tore, Ltd. v. Church, 105 Nev. 183, 185, 772 P.2d 1281, 1282 (1989). On appeal from an order granting summary relief, "we are required to determine whether the trial court erred in concluding that an absence of genuine issues of material fact justified its

properly before this court because the denial of a motion for summary judgment is not subject to appeal and will not be entertained by this court. *See* Taylor Constr. Co. v. Hilton Hotels Corp., 100 Nev. 207, 209, 678 P.2d 1152, 1153 (1984). Moreover, Evans has only appealed from the order granting the motion for summary judgment filed by Southwest Gas. *See* NRAP 3(c).

granting of summary judgment." Bird v. Casa Royale West, 97 Nev. 67, 68, 624 P.2d 17, 18 (1981).

Summary judgment is appropriate if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. NRCP 56(c); American Fed. Sav. v. County of Washoe, 106 Nev. 869, 871, 802 P.2d 1270 (1990). In determining whether issues of material fact exist, the trial court should review the record in a light most favorable to the non-moving party. Butler v. Bogdanovich, 101 Nev. 449, 451, 705 P.2d 662, 663 (1985).

In the instant controversy, the parties are in general agreement as to the facts underlying Stokes' employment and on-call status. The pivotal issue before us is whether those facts compel the conclusion reached by the district court that Stokes was not acting within the course and scope of his employment when the collision occurred.

## Determination of Course and Scope of Employment

Generally, whether an employee was acting within the scope of his or her employment for the purposes of *respondeat superior* liability is a question to be determined by the trier of fact. National Convenience Stores v. Fantauzzi, 94 Nev. 655, 659, 584 P.2d 689, 692 (1978). However, where undisputed evidence exists concerning the employee's status at the time of the tortious act, the issue may be resolved as a matter of law. *See* Molino v. Asher, 96 Nev. 814, 818, 618 P.2d 878, 880 (1980), and Connell v. Carl's Air Conditioning, 97 Nev. 436, 439, 634 P.2d 673, 675 (1981).

In the instant case, the district court determined that Stokes was not within the course and scope of his employment when the collision occurred because he had completed his work for the day, was en route home, and was not responding to a service call or running an errand for Southwest. Contrarily, Evans contends that the district court erred in its ruling because the undisputed evidence demonstrated as a matter of law that Stokes was acting within the course and scope of his employment when the accident occurred. Alternatively, Evans argues that summary judgment was improper because the evidence at a minimum raised a question of fact on the issue.

An employer may be held vicariously liable for the actions of an employee who is under the control of the employer and acting

within the scope of employment. *Molino,* 96 Nev. at 817, 618 P.2d at 879. Generally, an employee who is traveling to or from work is outside the scope of his or her employment unless the employee is performing an errand for the employer or otherwise conferring a benefit upon the employer. *Id.; National Convenience Stores,* 94 Nev. at 658-59, 584 P.2d at 691-92. *See also* Burnett v. C.B.A. Security Service, Inc., 107 Nev. 787, 820 P.2d 750 (1991) (employer was not liable for injuries caused by employee when employee's actions were not furthering the business interests of the employer).

The record in this case demonstrates that, as a matter of law, Stokes was both under Southwest's control and furthering a company purpose at the time of the collision. Although Stokes was en route home, Southwest *required* that he, as an on-call technician, take the Southwest vehicle home to respond to emergencies.[2] By driving the company van home, Stokes was facilitating his ability to respond to emergency calls. Indeed, a Southwest supervisor, Charles Harper, admitted that Stokes benefitted Southwest by leaving work in the company van.[3]

Southwest also received enhanced protection for the van and its contents when the vehicle was driven home by Stokes. The employees were charged with the safety and security of the van and its contents. The tools alone were said to be worth between $3,000 and $4,000. Southwest apparently had no security at its plant other than a fenced yard, which was considered to be an inadequate source of protection for the van.

Further, Southwest was responsible for the vehicle's gas and maintenance. Unlike other Southwest employees who drove company cars, Stokes was not required to report any income for his use of the company vehicle.

Southwest argues that it received no benefit from Stokes taking the van home because it has no natural gas customers in the Spring Creek area where Stokes lived, and, therefore, Stokes had to return to Elko to respond to an emergency call anyway. This

---

[2]Southwest's policy manual for Category A employees (which applied to Stokes) provided in relevant part:

> d. Employees required to take vehicle home in order to respond to emergency situations for the purpose of restoring or maintaining gas utility and services . . . .

[3]In his deposition, Harper testified as follows:

> Q. What about operating the truck, driving the truck home, wasn't that a company purpose?
> A. Well, yes.
> Q. So even though he was going home he was still furthering the company purpose in that he was operating a vehicle and taking it with him so that it would be available in the event of a call?
> A. Right.

contention is unpersuasive as support for summary judgment. Stokes apparently passed by the plant, which was located at the edge of Elko, when he responded to an emergency call. However, he was not required to stop there before responding to the call as the van was equipped with the necessary tools and supplies. Thus, by driving the van home Stokes could respond to the calls more expeditiously, to the benefit of Southwest.

Southwest relies on *Connell v. Carl's Air Conditioning* to support its position that an on-call employee is outside the scope of employment. In *Connell,* defendant's on-call employee was involved in a hit-and-run accident on his way home from work. The employee was in his personal car, but the employer was responsible for the payments and maintenance on the car. There was no evidence that Connell's after-hour activities were in any way restricted. And, he had apparently responded to emergency calls only twice in a three-year period. Thus, in *Connell* we concluded that the employee was not, as a matter of law, within the course and scope of his employment at the time of the accident.

Here, by contrast, Southwest continued to exercise significant control over Stokes while he was on call, notwithstanding the fact that his regular work day had ended. Stokes' activities were restricted when he was on call in order that he be available for emergency calls. He was required to remain within radio distance of Elko, and had to respond to an emergency call within a reasonable period of time. As noted previously, the van driven by Stokes was owned, fueled and maintained by Southwest. Stokes was not permitted to use the vehicle for other than *de minimus* personal use. The vehicle contained valuable Southwest property for which Stokes was responsible. Thus, Southwest's reliance on *Connell* is misplaced.

The foregoing facts compel us to conclude, as a matter of law, that Stokes was acting within the scope of his employment and furthering Southwest's business interests at the time of the collision.

We note that our conclusion is in accord with those reached in other jurisdictions faced with similar facts. *See,* e.g., McClean v. Chicago Great W. Ry. Co., 121 N.E.2d 337 (Ill.Ct.App. 1954). There, the defendant's employee injured the plaintiff while driving from work to his place of lodging in a truck owned by the employer. The truck, which contained tools of the employer, was operated by the employee to enable him to be on call for emergencies. The court found that the employee was within the course of his employment *as a matter of law.* It reasoned:

> This is not a going to or from work case, since Coble was subject to call to work at all times wherever he was. The

> truck was defendant's, carried defendant's tools and was necessarily driven wheresoever Coble was to stay. . . . [P]otentially there was a constant benefit to defendant in Coble's constant availability on call of defendant and it was virtually essential that he have the truck and tools no matter where he was.

*Id.* at 341. *See also* Massart v. Narragansett Elec. Co., 171 A. 238, 240 (R.I. 1934) (on-call employee driving company vehicle to respond to emergency calls was within scope of employment when he was driving it to his home just as he would have been in leaving his home in the vehicle to respond to such a call); State v. Gibbs, 336 N.E.2d 703, 705 (Ind.Ct.App. 1975) (state employee, who was furnished with a state-owned automobile for transportation to and from work because of his twenty-four-hour-a-day on-call status, was found to be acting within the scope of his employment when he crossed the center line of the highway and collided with the plaintiff's vehicle on his way home from work); and Lazar v. Thermal Equipment Corp., 195 Cal.Rptr. 890 (Cal.Ct.App. 1983) (on-call employee, authorized to use a company truck to enable him to respond to emergency after-hours calls, was within the scope of his employment when traveling to and from work; since the employee's trip conferred a tangible benefit on the employer, the jury should have been instructed that he was acting in the scope of his employment).

These cases draw a distinction between an employee who is simply en route to or from work, and one who remains on-call after regular work hours for the purpose of furthering company business. The mere fact that an employee is not responding to an emergency call at the time the tortious act occurs is not dispositive of the course and scope of employment issue for purposes of *respondeat superior* liability.

In this case, the record reflects that Southwest exercised significant control over Stokes while he was on-call. In addition, Southwest derived a benefit from requiring Stokes to take its vehicle home. The fact that Stokes was not responding to an emergency at the time of the accident does not, by itself, relieve Southwest of vicarious liability for Stokes' acts. Therefore, it was error to grant Southwest's motion for summary judgment on the issue of liability.

## CONCLUSION

Because there was sufficient evidence to determine, as a matter of law, that Stokes was acting within the course and scope of his employment at the time of the collision, we reverse the district court's order of summary judgment and remand this matter for trial.