# IN THE SUPREME COURT OF THE STATE OF NEVADA

JOLENE ALECK,
Appellant,
vs.
ZB NATIONAL ASSOCIATION, A
NEVADA BANKING ASSOCIATION,
D/B/A NEVADA STATE BANK;
ASHLEY EMMETT; AND NANCY
ISHMAEL,
Respondents.

No. 80840

FILED

APR 15 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____S. Young_____
DEPUTY CLERK

## ORDER OF REVERSAL AND REMAND

This is an appeal from a district court order granting in part and denying in part a motion to dismiss a tort action. Second Judicial District Court, Washoe County; Barry L. Breslow, Judge.

Appellant, Jolene Aleck, had a personal bank account at Nevada State Bank (NSB). Aleck was also a signatory on the NSB bank account for the Pyramid Lake JR/SR High School Board (the School Board), on which she then sat. According to Aleck, on three separate occasions she intended and asked to withdraw funds from her personal NSB bank account, but, due to the alleged negligence of the NSB bank tellers—respondent Ashley Emmett and respondent Nancy Ishmael (collectively, the tellers)—the requested funds were instead pulled from the School Board's account.

A few months later, a member of the School Board contacted NSB about the withdrawals, and an unidentified representative of NSB advised the School Board member that Aleck had made them. Because Aleck had not been authorized to do so, that School Board member advised the School Board's attorney, who initiated a formal investigation and advised Aleck of the same. Aleck claims that at this point she still had

21-10924

sufficient personal funds to reverse the transactions, but NSB refused to transfer the funds from her personal account to the School Board's account, despite Aleck's oral and written requests that it do so. Based on the unauthorized withdrawals, the School Board ultimately removed Aleck, and the State brought criminal charges against her. The State thereafter dismissed the criminal charges without prejudice.

Aleck then brought suit in the district court on 15 different claims stemming from the events as outlined above, against NSB as well as the tellers individually. The district court allowed Aleck's negligence claims against NSB to proceed. However, it dismissed Aleck's negligence claims against the tellers with prejudice, and held, citing an intermediate California court of appeal case, that the tellers had no duty of care to Aleck. *Lippert v. Bailey*, 50 Cal. Rptr. 478, 482 (Ct. app. 1966) (holding that insurance agents could not be held individually liable for their alleged negligent invasion of an insured's contractual rights by failing to obtain adequate insurance coverage). Aleck appeals this ruling solely as to her negligence-based claims (that is, claims 3 and 7) against the tellers. We have jurisdiction because the district court certified its order dismissing the tellers as final under NRCP 54(b). Our review is de novo, *see Dezzani v. Kern & Associates, Ltd.*, 134 Nev. 61, 64, 412 P.3d 56, 59 (2018), and we accept as true the allegations in the complaint, *see Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008).

The district court's and the tellers' reliance on *Lippert* is misplaced. As a threshold matter, the district court determined that the tellers' alleged negligence occurred within the scope of their employment. But the complaint appears to allege alternative negligence theories as against the tellers. As an example, Aleck alleges that NSB fired one of the tellers for her negligence in mishandling these transactions and a similar

transaction for a different NSB customer, and suggests that the tellers conspired to keep this information from investigators. And to the extent the complaint alleges that the tellers engaged in this sort of independent endeavor and then misreported it to NSB and the authorities, such allegations, if proven, potentially could establish actions outside the scope of their employment. And, because *Lippert* only even arguably has application if the tellers were acting in the scope of their employment, *see* 50 Cal. Rptr. at 481, that case does not support dismissal of the claims based upon the tellers' alleged independent acts, particularly not at this early stage in the proceedings.

On the other hand, certain of the alleged negligent acts—for instance, each teller pulling up the School Board's NSB account during her respective working hours, and withdrawing funds from that account for an NSB customer—seem to fall within the scope of the tellers' employment. *See Nat'l Convenience Stores, Inc. v. Fantauzzi*, 94 Nev. 655, 658, 584 P.2d 689, 692 (1978) (examining whether alleged employee negligence occurred within working hours or while on assignment for the employer). As to these acts, the district court's transposition of *Lippert* into a general statement of Nevada public policy about the need to limit tort liability for any employee involved in "arms-length" transactions with customers is not persuasive. For one, it is unclear whether the policy implications of *Lippert* should enter Nevada courts' calculus at all—even in the limited context of insurance agent liability. *Cf. O.P.H. of Las Vegas, Inc. v. Or. Mut. Ins. Co.*, 133 Nev. 430, 436, 401 P.3d 218, 223 (2017) (noting that in Nevada an insurance agent or broker has a duty "to use reasonable diligence to place the insurance and seasonably to notify the client if he is unable to do so").

Moreover, this case involves a fundamentally different industry. And unlike as between an insured and her provider, the

relationship between a bank and customer is not potentially adversarial. *See Lodholtz v. York Risk Services Group, Inc.*, 778 F.3d 635, 641 (7th Cir. 2015) (collecting cases adopting the rule that an insurance adjuster owes no duty to the insured in part because of unique nature of relationship). In particular, the lack of adversity between a bank and customer undercuts a significant rationale for the no-duty rule in the insurance context, namely, that "[t]he law of agency requires a duty of absolute loyalty of the adjuster to its employer, the insurer." *Grossman v. Homesite Ins. Co.*, 2009 WL 2357978, at *3 (Conn. Super. Ct. July 6, 2009) (internal quotation marks omitted). By way of contrast, in the instant case the tellers could have been completely loyal to NSB *and* competently served Aleck, without conflict. *Cf. Meineke v. GAB Bus. Servs., Inc.*, 991 P.2d 267, 271 (Ariz. Ct. App. 1999) (determining that an insurance adjuster owed no duty to the insured because "[c]reating a separate duty from the adjuster to the insured would thrust the adjuster into what could be an irreconcilable conflict between such duty and the adjuster's contractual duty to follow the instructions of its client, the insurer"); *see also Akpan v. Farmers Ins. Exch., Inc.*, 961 So. 2d 865, 873 (Ala. Civ. App. 2007) (collecting cases in accord).

Beyond this, as contrasted with that of the agent in *Lippert*, at least some of the alleged conduct by the tellers here could be tortious, independent of any contract between the principal (NSB) and consumer (Aleck). *See Lippert*, 50 Cal. Rptr. at 481-82; *see also Lodholtz*, 778 F.3d at 642 (collecting cases adopting the rule that an insurance adjuster owes no duty to the insured in part because the acts alleged to be tortious would only be so because of a contractual relationship); *Haney v. Fire Ins. Exchange*, 277 S.W.3d 789, 792 (Mo. Ct. App. 2009) (determining that the agent of an insurance company owed no duty to the insured because a "defendant who contracts with another generally owes no duty to contract non-parties").

This distinction carries weight. If Aleck's claims were solely based in contract, then the "disclosed principal" rule—which holds that the known identity of a principal to a contract excuses its agent from any *contractual based* liability—would control the outcome. *See Lippert*, 50 Cal. Rptr. at 482 (stating that "[w]here the signature as agent and not as a principal appears on the face of the contract, the principal is liable and not the agent"); *Bardi v. Farmers Fire Ins. Co.*, 260 A.D.2d 783, 787 (N.Y. App. Div. 1999) (concluding "[a]s agents of a disclosed principal whose actions were undertaken at the direction of the insurer, the adjusters cannot be held personally responsible to plaintiffs"); *see also Baugh v. Parish Gov't Risk Mgmt. Agency*, 715 So. 2d 645, 647 (La. Ct. App. 1998) (finding no duty for third party insurance administrator based on statute and noting that "[t]he same result occurs under the general law of representation and mandate where a disclosed agent enters or fails to carry out the contract on behalf of the principal"); Restatement (Second) of Agency § 343 (1958) (stating that "an agent who makes a contract for a disclosed principal becomes neither a party to the contract nor liable for the contract's performance, so that no liability attaches if a breach of contract occurs").

Where liability stems solely from the agent's alleged breach of the contract in question, this limitation on duty makes sense. In the insurance context, for example, allowing such liability would enlarge the agent's or broker's duties to include functions they are not obligated to perform and did not purport to undertake. *See O.P.H.*, 133 Nev. at 437, 401 P.3d at 223 (holding that an insurance broker did not have an obligation to notify an insured of pending cancellation of a policy for late payments where that duty was neither in the contract nor undertaken and performed negligently). But these common sense considerations do not inhere where, as here, independently tortious conduct is alleged.

Supreme Court
of
Nevada

(O) 1947A

5

Beyond this, California courts have *limited* rather than extended *Lippert*. Thus, the California Supreme Court recently has clarified that *Lippert* is best viewed through the lens of preclusive principles—that is, the *Lippert* plaintiffs could not sue the individual insurance agents because they had already settled with the insurance company for their economic injuries and released it from liability. *DKN Holdings LLC v. Faerber*, 352 P.3d 378, 389 (Cal. 2015). These principles have no application here. There is no allegation that Aleck has released the tellers' principal (NSB) from liability, and nothing in the briefing indicates that Aleck is suing the tellers individually so as to split her claims or recover economic damages cumulatively on a contract-based theory of damages. *Cf. Bock v. Hansen*, 170 Cal. Rptr. 3d 293, 304 (Ct. App. 2014) (determining that an insurance adjuster owed a duty to the insured because, in part, "[a]n agent or employee is always liable for his or her own torts whether the principal is liable or not, and in spite of the fact that the agent acts in accordance with the principal's directions" (internal quotation marks omitted)). Accordingly, the expansion proposed here—importing *Lippert*'s no-duty rule to Nevada, outside the insurance context, and beyond claims based in contract—is unwarranted.

Apart from relying on *Lippert* for policy support, the district court cited the rule stated in *Sanchez v. Wal-Mart Stores, Inc.*, that "in the context of professional relationships, the duty element of negligence [can] be established in one of two ways: (1) a plaintiff having a direct relationship with the defendant, or (2) by establishing that the plaintiff is a known or identifiable third party to whom the defendant owes a legal duty." 125 Nev. 818, 825, 221 P.3d 1276, 1281 (2009). The district court determined that the tellers had no relationship with Aleck. But in contrast to the anonymous third party plaintiff in *Sanchez*—who was struck by a driver

impaired by medicine a Wal-Mart pharmacist had negligently supplied—Aleck was NSB's customer, and was served by the tellers whom she sues here. Seemingly confirming this analysis, the district court acknowledged that Aleck was a "known primary party and not a third party to the action." This fact alone already substantially limits the potential liability the tellers face—the liability Aleck attempts to impose here is direct and necessarily tied to a determinate class. This renders further limitation on policy grounds unnecessary. *Cf. Ultramares Corp. v. Touche*, 174 N.E. 441, 179 (N.Y. 1931) (public accountant owed no duty of care to company investors because that would "expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class").

Accordingly, the district court erred when it held, as a matter of law, that Aleck's claims for negligence and negligent infliction of emotional distress, as to the individual tellers, failed to state a claim on which relief could be granted. We therefore REVERSE AND REMAND this matter to the district court for proceedings consistent with this order.

_____, J.
Cadish

_____, J.
Pickering

_____, J.
Herndon

cc:    Hon. Barry L. Breslow, District Judge
       Janet L. Chubb, Settlement Judge
       The Law Offices of Charles R. Zeh, Esq.
       Kent Law, PLLC
       McDonald Carano LLP/Reno
       Washoe District Court Clerk